[Cite as *Lloyd v. Cleveland Clinic Found.*, 2019-Ohio-1885.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 107214**

## SUSAN LLOYD

PLAINTIFF -APPELLANT

vs.

## CLEVELAND CLINIC FOUNDATION, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-884999

**BEFORE:** Kilbane, A.J., Boyle, J., and Headen, J.

**RELEASED AND JOURNALIZED:** May 16, 2019

**APPELLANT**

Susan Lloyd
P.O. Box 2577
Streetsboro, Ohio 44241


**ATTORNEYS FOR APPELLEES**

Tammi J. Lees
Leighann K. Fink
Roetzel & Andress, L.P.A.
222 South Main Street, Suite 400
Akron, Ohio 44308

MARY EILEEN KILBANE, A.J.:

{¶1} Plaintiff-appellant, Susan Lloyd ("Lloyd"), pro se, appeals from the trial court's decision granting summary judgment in favor of defendants-appellants, The Cleveland Clinic Foundation, Cleveland Clinic Health Systems, Cleveland Clinic Solon Family Health Center, and Todd Richards, PA (collectively referred to as "defendants"). For the reasons set forth below, we affirm.

{¶2} In August 2017, Lloyd, pro se, filed a complaint against defendants alleging claims for defamation, disability discrimination, and intentional infliction of emotional distress ("IIED"). The claims arise from Lloyd's August 26, 2016 visit to the Cleveland Clinic Express Care Clinic located in the Solon Family Health Center. On that day, Lloyd was treated by Todd Richards, PA ("Richards"), a Physician Assistant with The Cleveland Clinic Foundation ("CCF"). Lloyd complained that she had "foam in her urine." She also brought her two service dogs to the visit, which she kept in a pet stroller. Richards examined Lloyd and ordered a urinalysis, neither of which provided him with adequate information to determine the cause of Lloyd's complaint. Richards made recommendations, including a follow-up appointment with Lloyd's primary care physician for further evaluation.

{¶3} During the visit, Lloyd told Richards that she felt unsafe at home due to her neighbor's threats to kill her, which were posted on Facebook. Richards then suggested that Lloyd to go to the Emergency Department ("ED"), which had resources to assist patients who feel unsafe at home. Lloyd did not want to go to the ED and Richards, with

the assistance of Deborah Stack, RN ("Stack"), eventually arranged for Lloyd to stay with her friend and emergency contact. Following Lloyd's visit, Richards created a Progress Note summarizing the visit.

{¶4} With regard to her defamation claim, Lloyd alleges that an unidentified CCF employees made defamatory statements on Facebook and CCF employees Rose Ewell-Bencie, Anthony Batone, and Richards made defamatory statements about her. With regard to her discrimination, Lloyd alleges that defendants discriminated against her by not providing the same quality of care as someone who does not own service dogs. She alleges that Richard's statement that she brought "her two dogs with her in a baby stroller because she is 'afraid that the neighbors will kill them'" was discriminatory. With regard to her IIED claim, Lloyd alleges that defendants "maliciously allowed their employees and continue to allow their employees to write offensive defamatory comments on social media knowing this will cause Plaintiff injury."

{¶5} Prior to defendants moving for summary judgment, Lloyd filed several motions, including a motion to compel discovery, a motion for sanctions, and a motion to disqualify defendants' attorney. The motion to compel sought to compel defendants' responses to Lloyd's written discovery. Lloyd's motion to disqualify was based upon Lloyd's allegation that defendants' law firm and one of Lloyd's alleged fact witnesses, Brett McClafferty ("McClafferty"), were affiliated because of posts on McClafferty's social media pages. Defendants opposed both motions, arguing that it served Lloyd with discovery and Lloyd lacked standing to request disqualification because: she was never a

client of defendants' law firm or attorney; there was never an attorney-client relationship between McClafferty and defendants' law firm and attorney; and McClafferty did not have a relationship with the law firm. Defendants included with their opposition an affidavit and a copy of a cease and desist letter sent by the law firm's general counsel to McClafferty, demanding that he remove any references to an alleged affiliation with the law firm from all of the websites and publications cited in Lloyd's motion.

{¶6} The trial court held a telephone conference on the motions. Following the telephone conference, the trial court denied, in part, and granted, in part, Lloyd's motion to compel discovery by ordering the CCF to "forward any other relevant policies to [Lloyd] after an inquiry." The court denied Lloyd's motion to disqualify in its entirety and ordered Lloyd to provide defendants with a description of all alleged defamatory statements that formed the factual basis for her defamation claim.

{¶7} In an email to defendants' attorney, Lloyd listed the alleged defamatory statements that formed the basis of her defamation claim, which were taken from Richard's Progress Note and were part of Lloyd's medical records. She also alleged Stack defamed her as well to Portage Job and Family Services. In particular, she stated that Richards made the following defamatory statements:

> [Lloyd] has "feared" complaint when in reality [Lloyd] had true foamy urine with history of excess protein in urine diagnosed at Cleveland Clinic. These records were all accessible to Defendants on August 26 2016.
>
> Stated gang has plans to poison [Lloyd] when in reality [Lloyd] stated her neighbor has an entire Facebook page with threat[s] to kill her, blow up her house, etc and [Lloyd] told staff that she had these Facebook pages in her possession. Nobody would look at them. [Lloyd] never stated anything

about plans to poison her and there are no threats online in regards to [Lloyd] being poisoned.

[Richards] states that [Lloyd's] primary Priti Mehta states [Lloyd] has many medical complaints which were not to be substantiated medically. Dr Mehta adamantly denies this and [Richards] had [Lloyd's] entire 6 year[s] of medical records which adamantly dispute this statement.

[Richards] states [Lloyd] brings her dogs in baby stroller because she is afraid the neighbors will kill them. When in reality [Lloyd's] dogs are licensed in the state of Ohio as service dogs and were in [Gen7] pet stroller all of which [Lloyd] explained on arrival. [Lloyd] always shows her Ohio tags and state [Lloyd's] dogs are service dogs. [Lloyd's] dogs have gone to almost every appointment at the Cleveland Clinic and [Lloyd] never had any prior issues.

[Richards] states she wears construction grade face mask because [Lloyd] is afraid she may catch something when in reality [Lloyd] was told by her Cleveland Clinic Pulmonologists and Immunologists to wear a mask due to her asthma and immune deficiency. In fact people were smoking outside in Cleveland Clinic smoke free campus. Cigarette smoke is [Lloyd's] number one cause of her asthma and angina and the main reason why she must wear a mask.

[Richards] spoke to Joanne Solak who confirmed what [Lloyd] stated and that the threats against [Lloyd] were legitimate and Joanne seemed reliable.

Stated [Lloyd] needed psychological evaluation and had mental issues.

Todd Richards defamed [Lloyd] anyway[.]

{¶8} Lloyd also filed two motions seeking leave to file an amended complaint to add Stack as an additional defendant. Defendants opposed both because of procedural deficiencies by Lloyd. The trial court denied both motions.

{¶9} Thereafter, defendants moved for summary judgment and moved to file under seal exhibit B (the Progress Note) to their motion for summary judgment. Lloyd opposed defendants' motion, arguing that since she attached the Progress Note to her complaint,

there is no reason to seal these records now.   As a result, defendants withdrew the motion to file the Progress Note under seal and submitted a notice of filing exhibit B to the motion for summary judgment.   Lloyd filed a brief in opposition to defendants' motion for summary judgment.   The trial court granted the defendants' motion, finding that no genuine issues of material fact exist.

{¶10} Lloyd now appeals, raising the following seven assignments of error for review, which shall be discussed together where appropriate.

### Assignment of Error One

The [trial] court committed reversible error by dismissing [Lloyd's] case with prejudice and granting defendants' motion for summary judgment after [Lloyd] submitted sufficient evidence to establish a genuine material fact exists.

### Assignment of Error Two

The [trial] court committed reversible error by allowing defendants and their attorneys to commit perjury[.]

### Assignment of Error Three

The [trial] court committed reversible error by denying [Lloyd's] motion to amend her complaint and to add on [Stack].

### Assignment of Error Four

The [trial] court committed reversible error by refusing to force defendants to comply with discovery[.]

### Assignment of Error Five

The [trial] court committed reversible error by stating Lloyd did not present enough evidence to establish defamation.

### Assignment of Error Six

The [trial] court committed reversible error by stating Lloyd did not present enough evidence to establish disability discrimination.

Assignment of Error Seven

The [trial] court erred by stating Lloyd did not present enough evidence to establish intentional infliction of emotional distress[.]

Motion for Summary Judgment

**{¶11}** In the first, fifth, sixth, and seventh assignments of error, Lloyd argues that the trial court's grant of defendants' motion for summary judgment was improper.

**{¶12}** We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

**{¶13}** Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response,

by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

**{¶14}** To establish an IIED claim, the plaintiff must demonstrate that: 1) the defendant intended to cause the plaintiff serious emotional distress; 2) the defendant's conduct was extreme and outrageous; and 3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 1994-Ohio-389, 644 N.E.2d 286. Extreme and outrageous conduct is conduct that goes beyond all possible bounds of decency and is so atrocious that it is "utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to sustain a claim for relief." *Id.*

**{¶15}** With regard to Lloyd's defamation claims, we note that defamation is a "false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in his trade or business." *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-Ohio-6803, 783 N.E.2d 920, ¶ 15 (8th Dist.). To prevail on her defamation claim, Lloyd must prove five elements: "'1) a false statement; 2) about the plaintiff; 3) published to a third party; 4) with the required degree of fault by the defendant publisher; and 5) defamatory per se or

defamatory per quod, causing special harm to the plaintiff.'" *Garofolo v. Fairview Park*, 8th Dist. Cuyahoga Nos. 92283 and 93021, 2009-Ohio-6456, ¶ 17, quoting *Lynch v. Studebaker*, 8th Dist. Cuyahoga No. 88117, 2007-Ohio-4014.

> "Defamation per se means that the defamation 'is accomplished by the very words spoken.' * * * Defamation per quod means that a statement with an apparently innocent meaning becomes defamatory through interpretation or innuendo. * * * In order for a statement to be defamatory per se, it must 'consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation.' * * * With defamation per se, damages and actual malice are presumed. With defamation per quod, the plaintiff must plead and prove special damages resulting from the defamatory statements."

*Kanjuka* at ¶ 16, quoting *McCartney v. Oblates of St. Francis De Sales*, 80 Ohio App.3d 345, 609 N.E.2d 216 (6th Dist.1992). Truth, however, is an absolute defense to a defamation claim. R.C. 2739.02.

{¶16} In the instant case, Lloyd cannot prove the elements necessary to establish her claims of defamation or intentional infliction of emotional distress. In order to establish a prima facie case of defamation, Lloyd must establish the utterance of a defamatory statement that is published "to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character." *Hahn v. Kotten*, 43 Ohio St.2d 237, 243, 331 N.E.2d 713 (1975). Lloyd's alleged defamatory statements in the Progress Note were not defamatory because they were not subject to publication. Statements made about a patient in a medical record do not constitute a publication because such records are confidential under the Health

Insurance Portability and Accountability Act. *Outlaw v. Werner*, 8th Dist. Cuyahoga No. 92297, 2009-Ohio-2362, ¶ 26, citing 45 C.F.R. 164.508.

{¶17} Here, there is no evidence to establish that the defendants published the Progress Note to a third party outside the CCF system. Lloyd's medical records — the Progress Note — were published when she attached it as an exhibit to her complaint. Defendants attempted to file this Progress Note under seal, but Lloyd opposed arguing that since she attached the Progress Note to her complaint, there is no reason to seal these records. Without the CCF's publication to a third party, Lloyd did not establish her defamation claim. Moreover, Lloyd failed to demonstrate that the statements were false.[1]

{¶18} With regard to her IIED claim, Lloyd did not demonstrate that any employee of CCF engaged in "extreme or outrageous" conduct as a matter of law. She did not present any evidence to show that Richards intended to cause her serious emotional distress, or that he acted "beyond all possible bounds of decency" by exhibiting conduct that was so atrocious that it is utterly intolerable in a civilized community. *Yeager*, 6 Ohio St.3d at 375, 453 N.E.2d 666. Additionally, there is no evidence that Lloyd actually suffered serious emotional distress, which must be "severe and debilitating" to

---

[1]We note that "[d]efamatory statements are conditionally privileged if they pertain to or are motivated by the existence of some special relationship such as the family, lawyer-client, doctor-patient, or insurer-insured relationship. It is generally accepted as appropriate and desirable that one will take steps to protect the interests of another with whom he shares such a relationship." *Hahn*, 43 Ohio St. 2d at 247, 331 N.E.2d 713. If qualified privilege is demonstrated, then the plaintiff must demonstrate express malice, which is ill will, hatred, revenge, or wanton and reckless disregard for the truth on the defendant's part. *Id.* at 248.

withstand summary judgment. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983), citing *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131 447 N.E.2d 109 (1983).

**{¶19}** Accordingly, the trial court properly granted summary judgment on Lloyd's defamation and IIED claims.

**{¶20}** The trial court also acted properly in granting summary judgment on Lloyd's disability discrimination claim. Under Ohio Adm. Code 4112-5-06(A)(2), "[i]t shall constitute unlawful discrimination * * * for any facility which is a place of public accommodation to * * * [d]eny any disabled person any term, condition, privilege, service or advantage which, upon entrance to such facility, accrues to the public in general." Similarly, the Americans with Disabilities Act states, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

**{¶21}** Lloyd alleges in her complaint that she did not receive the same quality of care as someone who does not own a service dog. She bases this allegation on Richards's statements in her Progress Note that Lloyd's dogs were there because she indicated was afraid that her neighbor was going to kill them and that she has them in a baby stroller.

**{¶22}** These statements do not constitute discrimination in providing equal access to public accommodations under the applicable statutes. Morever, Lloyd did not provide

any evidence to establish that she did not receive the same level of services that ordinarily would be provided by the CCF to a patient with similar symptoms.  Lloyd did not submit any expert medical opinions to establish that she received inadequate care from Richards.  As a result, the trial court properly granted summary judgment on the disability discrimination claim.

**{¶23}** Accordingly, the first, fifth, sixth, and seventh assignments of error are overruled.

Motion for Sanctions

**{¶24}** In the second assignment of error, Lloyd argues the trial court's denial of her motion for sanctions was improper.

**{¶25}** Generally, appellate courts apply an abuse of discretion standard of review to a trial court's decision to grant or deny a motion for sanctions.  *Heaton v. Fort Motor Co.*, 8th Dist. Cuyahoga No. 194636, 2017-Ohio-7479, ¶ 27.

**{¶26}** Lloyd argues for the first time on appeal that defendants' attorney committed perjury warranting sanctions.  We cannot consider this argument, however, because it was not raised in the trial court proceedings below.  It is well-established that "[a]rguments raised for the first time on appeal are generally barred."  *Cawley JV, L.L.C. v. Wall St. Recycling L.L.C.*, 2015-Ohio-1846, 35 N.E.3d 30, ¶ 17 (8th Dist.).

> "Such arguments are barred by the doctrine of waiver for failure to raise these arguments before the trial court.  'It is well established that a party cannot raise any new issues or legal theories for the first time on appeal.' *Dolan v. Dolan*, Trumbull App. Nos. 2000-T-0154 and 2001-T-0003, 2002-Ohio-2440, at ¶ 7, citing *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629.  'Litigants must not be permitted to

hold their arguments in reserve for appeal, thus evading the trial court process.' *Mark v. Mellott Mfg. Co., Inc.* (1995), 106 Ohio App.3d 571, 589, 666 N.E.2d 631."

*Cawley JV* at ¶ 17, quoting *Hollish v. Maners*, 5th Dist. Knox No. 2011CA000005, 2011-Ohio-4823, ¶ 44, quoting *Carrico v. Drake Constr.*, 5th Dist. Stark No. 2005CA00201, 2006-Ohio-3138, ¶ 37.

**{¶27}** Lloyd did allege in her motion for sanctions that Richards and Stack committed perjury in the affidavits filed in support of defendants' summary judgment motion. In making this allegation, however, Lloyd does not set forth any evidence to prove that any statements in these affidavits were false. An accusation of perjury is insufficient to establish that an affidavit is false, where there is no objective evidence, other than Lloyd's unsubstantiated allegations, to prove that the affidavits were false. Based on the foregoing, the trial court clearly did not abuse its discretion when it denied Lloyd's motion for sanctions.

**{¶28}** Therefore, the second assignment of error is overruled.

<u>Motion to Amend Complaint.</u>

**{¶29}** In the third assignment of error, Lloyd argues that the trial court impoperly denied her motion to amend her complaint.

**{¶30}** Civ.R.15(A) provides that a

party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier.

**{¶31}** The decision of whether to grant a motion for leave to amend a pleading is within the discretion of the trial court. *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 99, 1999-Ohio-207, 706 N.E.2d 1261, citing *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 573 N.E.2d 622 (1991). We will not overturn a trial court's ruling on a motion to amend a pleading without first determining that the court abused its discretion. *Id.*

**{¶32}** Lloyd filed two separate motions to amend her complaint. The first motion consisted of a single paragraph. Lloyd did not state with particularity the substance of the proposed amendment or otherwise provide the trial court with a sufficient factual or legal basis for her proposed amended complaint. Defendants opposed the motion the same day it was filed. The next day, Lloyd filed her second motion to amend her complaint. This time she included with her single paragraph a copy of her amended complaint, adding Stack as a defendant. On the same day that defendants opposed this motion, the trial court denied both of Lloyd's motions.

**{¶33}** In the instant case, Lloyd did not identify the purpose of amending her complaint in either motion, nor did she provide the court with sufficient basis to grant her leave to file an amended complaint. We note that while Civ.R. 15(A) allows for liberal amendment, there must be some valid, good faith basis for the amendment. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973). Since Lloyd did not set forth any information in her single paragraph motion that led the trial court to conclude that she

has an actionable claim, the trial court properly denied both motions to amend the complaint.

{¶34} Accordingly, the third assignment of error is overruled.

Motion to Compel

{¶35} In the fourth assignment of error, Lloyd argues the trial court improperly denied her motion to compel.

{¶36} We note that the manner and specifics with which a trial court directs and controls discovery in its civil cases rests within the sound discretion of the trial court. *6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, 62 N.E.3d 928, ¶ 18 (8th Dist.), citing *State ex rel. V Cos. v. Marshall Cty. Aud.*, 81 Ohio St.3d 467, 469, 1998-Ohio-329, 692 N.E.2d 198. Unless the trial court has abused its discretion, an appellate court will not disturb a trial court's decision in this regard. *Id.*

{¶37} In the instant case, we cannot say the trial court abused its discretion. Here, Lloyd filed a motion to compel discovery. The trial court denied, in part, and granted, in part, Lloyd's motion to compel discovery by ordering the CCF to "forward any other relevant policies to [Lloyd] after an inquiry." The court considered the merits of her motion and found merit to part of it. Based on this, the trial court did not abuse its discretion.

{¶38} Therefore, the fourth assignment of error is overruled.

{¶39} Accordingly, judgment is affirmed.

It is, therefore, considered that said appellee recover of said appellant their costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
RAYMOND C. HEADEN, J., CONCUR