[Cite as *Holmok v. Burke*, 2022-Ohio-2135.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

EDWARD HOLMOK, :

    Plaintiff-Appellant, :

                           No. 110900

    v. :

HANNAH BURKE, ET AL., :

    Defendants-Appellees. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 23, 2022

---

Civil Appeal from the Lakewood Municipal Court
Case No. 2020CVE01342

---

### *Appearances:*

Jacobs & Lowder and Jospeh J. Jacobs, *for appellant*.

Burkes Law, LLC, and John F. Burke, III, *for appellee*.

LISA B. FORBES, J.:

{¶ 1} Appellant Edward Holmok ("Holmok") appeals the trial court's order granting judgment on the pleadings in favor of appellee Hannah Burke ("Burke"). After reviewing the facts of the case and the pertinent law, we affirm.

## I. Facts and Procedural History

{¶ 2} Holmok filed a complaint for defamation and intentional infliction of emotional distress against John Virag ("Virag") and Burke.[1] In his complaint, Holmok alleged that on July 26, 2020, Virag tweeted, "When I was in his engineering class, I had been a part of a few reports filed against him. Some being racial and some being sexist. Nothing was ever done." Holmok claimed that Virag's tweet was about Holmok. The complaint further alleged that on the same day, Burke retweeted Virag's tweet and added the "@Lakewood_LHS" tag to her retweet. According to Holmok, he is a teacher at Lakewood High School, his "Lakewood School Board personnel file does not contain any complaints for racial or sexual discrimination," and he has "never been disciplined for racial or sexual discrimination in his teaching position[.]" Thus, Holmok alleges that Virag's tweet is false.

{¶ 3} Pertaining to Burke, Holmok alleged in his defamation claim that by retweeting Virag's allegedly false tweet, Burke "published the aforementioned false statement about [Holmok] to her 938 Twitter followers [and] the Lakewood High School community * * *." In doing so, Holmok contends that Burke "acted with malice" and that he "has suffered embarrassment, anxiety, and emotional distress" and "incurred costs for counseling[.]"

---

[1] Only claims against Burke are pertinent to this appeal.

{¶ 4} Under his claim for intentional infliction of emotional distress, Holmok alleged that through Virag and Burke's "series of false accusations, [they] intended to cause [Holmok] emotional distress, or knew or should have known that their actions would result in serious emotional distress[.]" Further, Holmok alleged that Burke's "conduct has been extreme and outrageous[,]" that she has caused him psychological injury, and that he has "suffered serious mental anguish[.]"

{¶ 5} Burke filed an answer to Holmok's complaint in which she raised several affirmative defenses, including immunity under 47 U.S.C. 230, the federal Communications Decency Act ("CDA"). Burke also filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C).

{¶ 6} On September 9, 2021, the trial court granted Burke's motion for judgment on the pleadings finding that she was immune from liability under the CDA. It is from this order that Holmok appeals.

## II. Law and Analysis

{¶ 7} Holmok raises the following two assignments of error:

The trial court erred in granting defendant's motion for judgment on the pleadings since plaintiff's complaint properly pled the claim of Intentional infliction of emotional distress, and defendant's malicious and illegal conduct preclude her from claiming any protection under the Communications Decency Act.

The trial court erred in granting defendant's motion for judgment on the pleadings since plaintiff's complaint properly pled the claim of defamation, and defendant's malicious and illegal conduct preclude her from claiming any protection under the Communications Decency Act.

{¶ 8} For ease of discussion, both assignments of error will be addressed together.

**{¶ 9}** Motions for judgment on the pleadings are governed by Civ.R. 12(C), which states "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

> Judgment on the pleadings is appropriate where, after considering the material allegations of the pleadings and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party, the court finds that the moving party is entitled to judgment as a matter of law.

*Socha v. Weiss*, 2017-Ohio-7610, 97 N.E.3d 818, ¶ 9 (8th Dist.). An appellate court's review of a trial court's decision on a motion for judgment on the pleadings is de novo. *Skoda Minotti Co. v. Novak, Pavlik & Deliberato, L.L.P.*, 8th Dist. Cuyahoga No. 101964, 2015-Ohio-2043, ¶ 10, citing *Coleman v. Beachwood*, 8th Dist. Cuyahoga No. 92399, 2009-Ohio-5560, ¶ 15.

**{¶ 10}** The affirmative defense of statutory immunity must be asserted in a responsive pleading. *Carswell v. Akron*, 9th Dist. Summit No. 29321, 2019-Ohio-4444, ¶ 13. A party asserting immunity may utilize a Civ.R. 12(C) motion if the validity of the defense can be determined from the allegations in the pleadings. *Id.*

**{¶ 11}** In his appellate brief, Holmok contends that the trial court erroneously based its decision solely on the July 26, 2020 retweet rather than a "malicious pattern of conduct" through "a series of messages * * * that [Burke] added her own disparaging and damaging statements." (Emphasis omitted.) Upon review, we find that in his complaint, Holmok complained of a single tweet by Virag that was subsequently retweeted by Burke. Accordingly, whether Burke is liable for Holmok's claims is limited to the July 26, 2020 retweet.

{¶ 12} Further, Holmok contends that the trial court only addressed his defamation claim against Burke. However, in its journal entry, the trial court stated:

> The plaintiff asserted two claims in his complaint, defamation and intentional infliction of emotional distress. Both of these claims arise out of a single statement retweeted by defendant Burke. The statement was not modified or enhanced when retweeted. The complaint does not allege any other act by defendant Burke as the cause of any injury to the plaintiff. As such, both claims are barred by the CDA.

Accordingly, we find that the trial court expressly addressed both the defamation claim and the intentional infliction of emotional distress claim.

## A. Communications Decency Act

{¶ 13} The CDA establishes immunity "'against causes of action of all kinds'" for interactive service providers and users. *US Dominion, Inc. v. Byrne*, D.D.C. Civil Action No. 1:21-cv-02131 (CJN), 2022 U.S. Dist. LEXIS 72634, 19 (Apr. 20, 2022), quoting *Marshall's Locksmith Serv. Inc. v. Google, L.L.C.*, 925 F.3d 1263, 1267, 441 U.S. App. D.C. 196 (D.C.Cir.2019). Section 230(c)(1) of the CDA states, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. 230(c)(1). Furthermore, the CDA expressly preempts civil claims under state law: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. 230(e)(3).

{¶ 14} The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or

services offered by libraries or educational institutions." 47 U.S.C. 230(f)(2). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* at 47 U.S.C. 230(f)(3). Section 230(c)(1) does not extend immunity to information content providers. While "user" is not defined within the statute, Merriam-Webster's dictionary defines "user" as "one that uses." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/user (accessed May 18, 2022); *See State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 39 ("In the absence of a definition of a word or phrase used in a statute, words are to be given their common, ordinary, and accepted meaning." ); *State v. Jackson*, 12th Dist. Butler No. CA2011-06-096, 2012-Ohio-4219, ¶ 34 ("Courts have used dictionary definitions to determine the plain and ordinary meaning of a statutory term.").

{¶ 15} In both of Holmok's assignments of error he argues that Burke cannot claim immunity under the CDA because, "[a]t its core" the CDA "shields service providers from" liability. Holmok further argues that Burke is not immune from liability under the CDA because she is "an 'information content provider' because she created and sent her own content and further developed information that others created." However, based upon our de novo review of the material allegations in the complaint, we find that Burke's alleged retweeting of Virag's July 26, 2020 tweet does not convert her from a "user" into an "information content provider."

{¶ 16} Courts across the country have routinely found that Twitter falls within the CDA's definition of an interactive computer service. *See, e.g., Mezey v. Twitter, Inc.*, S.D.Fla. No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, 1 (July 19, 2018); *Am. Freedom Defense Initiative v. Lynch*, 217 F.Supp.3d 100, 104 (D.D.C.2016); *Brittain v. Twitter, Inc.*, N.D.Cal. No. 19-cv-00114-YGR, 2019 U.S. Dist. LEXIS 97132, 2 (June 10, 2019). The allegations in the complaint related to Burke's claim that she used Twitter to retweet, making her a user of an interactive computer service.

{¶ 17} The act of retweeting can fall outside of the immunity provided by the CDA when a user couples the retweet with his or her own added speech. In *US Dominion*, D.D.C. Civil Action No. 1:21-cv-02131 (CJN), 2022 U.S. Dist. LEXIS 72634, the defendant, Byrne, claimed immunity under the CDA when he retweeted a story that "a Dominion voting machine had been hacked during the 2020 election." *Id.* at 18. The D.C. District Court noted that "[w]hile section 230 may provide immunity for someone who merely shares a link on Twitter,* * * it does not immunize someone for making additional remarks that are allegedly defamatory." *Id.* at 20; *see also Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp.3d 1311, 1321 (M.D.Fla.2015) (finding that CDA immunity can be lost by "substantively alter[ing] third-party content or becom[ing] directly involved in the alleged illegality"). The district court found that Byrne could not claim immunity under the CDA because he did not simply retweet a statement made by an information content provider. Rather, "Byrne himself made the following statements, which

accompanied the retweeted link: 'I vouch for this. I have seen the photographs, the computer forensics, the IP traces back to China. To a corporation whose name has long been linked to CP: Exam Indicates Georgia Tabulating Machine Sent Results to China.'" *Id*. at 18-19. Because Byrne coupled allegedly defamatory remarks with his retweet, the CDA did not protect him from liability.

{¶ 18} Here, as alleged by Holmok, Virag tweeted that when he was a student in Holmok's class, he was involved in "a few reports filed against him" that were "racist" and "sexist" in nature. On the same day, Burke retweeted Virag's tweet and added a tag to Lakewood High School's twitter account. Unlike the court in *Byrne*, we find that Burke did not substantively alter or add to Virag's content when she added the tag "@Lakewood_LHS." *See Roca Labs* at 1321 (finding "the addition of a handle that reads '@rocalabs' or '@pissedconsumer' and a link to the tweets" alone does not substantively alter the third-party content).

{¶ 19} Based on the allegations in the complaint, Burke cannot be "treated as the publisher or speaker," under the CDA, of Virag's tweet and "no liability may be imposed under any state * * * law that is inconsistent with [Section 230]." 47 U.S.C. 230(e)(3).

**B. Defamation**

{¶ 20} Holmok argues that Burke is liable for defamation because she "published false accusations against" him.

{¶ 21} The elements of a defamation claim are: "(1) that a false statement of fact was made; (2) that the statement was defamatory; (3) that the statement was

published; (4) that the plaintiff suffered injury as a proximate result of the publication; and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1st Dist.1996).

{¶ 22} However, under the CDA Burke cannot be "treated as the publisher or speaker" of Virag's tweet; accordingly, Holmok has not alleged an actionable statement published by Burke. Therefore, the trial court did not err when it granted Burke judgment on the pleadings dismissing Holmok's defamation claim.

### C. Intentional Infliction of Emotional Distress

{¶ 23} Next, we turn to Holmok's intentional infliction of emotional distress claim.

> To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608, 2009-Ohio-5826, ¶ 6.

{¶ 24} "Extreme and outrageous conduct is conduct that goes beyond all possible bounds of decency and is so atrocious that it is 'utterly intolerable in a civilized community.'" *Lloyd v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 107214, 2019-Ohio-1885, ¶ 14, quoting *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983). "'[M]ere insults, indignities, threats, annoyances, petty

oppressions, or other trivialities' are insufficient to sustain a claim for relief." *Id*., quoting *Yeager* at 375.

{¶ 25} Holmok claims Burke's retweeting of Virag's statement was extreme and outrageous and caused him emotional distress. That is, Holmok's claim of intentional infliction of emotional distress against Burke is based exclusively on her status as a user of an interactive computer service. Because Burke cannot be "treated as the publisher or speaker" of Virag's tweet under the CDA, Burke is immune from liability for her retweet of Virag's original tweet. *See Yue v. Miao*, D.S.C. No. 3:18-3467-MGL-PJG, 2019 U.S. Dist. LEXIS 200404, 12-17 (June 27, 2019) (finding the defendant immune from liability under the CDA for plaintiff's intentional infliction of emotional distress claim where the conduct that plaintiff sought to hold defendant liable for was someone else's online speech). Upon review, we find the trial court did not err in dismissing Holmok's intentional infliction of emotional distress claim.

{¶ 26} Accordingly, both of Holmok's assignments of error are overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____

LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR