[Cite as *State ex rel. Yost v. Rover Pipeline, L.L.C.*, 2019-Ohio-5179.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, EX REL., DAVE YOST, OHIO ATTORNEY GENERAL | JUDGES: Hon. William B. Hoffman, P.J. Hon. John W. Wise, J. Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellant | |
| -vs- | |
| ROVER PIPELINE, LLC; PRETEC DIRECTIONAL DRILLING, LLC; MEARS GROUP, INC.; LANEY DIRECTIONAL DRILLING CO.; ATLAS TRENCHLESS, LLC; AND B & T DIRECTIONAL DRILLING, INC. | Case No. 2019CA00056 |
| Defendants-Appellees | O P I N IO N |

CHARACTER OF PROCEEDINGS:   Appeal from the Stark County Court of Common Pleas, Case No. 2017-CV-02216

JUDGMENT:   Affirmed

DATE OF JUDGMENT ENTRY:   December 9, 2019

APPEARANCES:

For Plaintiff-Appellant

DAVE YOST
Ohio Attorney General
AARON S. FARMER
JANEAN R. WEBER
AMANDA M. FERGUSON
Environmental Enforcement Section
Assistant Attorney General
30 East Broad Street, 25th Floor
Columbus, Ohio  43215

For Defendant-Appellee Mears Group, Inc., LLC

FREDERIC ("FRITZ") X. SHADLEY
DAVID A. MEYER
600 Vine Street, Suite 2800
Cincinnati, Ohio  45202

For Defendant-Appellee Rover
Pipeline, LLC

STEPHEN H. DANIELS
MICHAEL S. MCMAHON
McMahon DeGulis LLP
The Caxton Building
812 Huron Road, E., Suite 650
 Cleveland, Ohio  44115


WILLIAM S. SCHERMAN *(pro hac vice admitted)*
DAVID DEBOLD *(pro hac vice admitted)*
JASON FLEISCHER *(pro hac vice admitted)*
RUTH PORTER *(pro hac vice admitted)*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

For Defendant-Appellee B & T
Directional Drilling Inc.

GRANT J. KEATING
Dworken & Bernstein Co., LPA
60 South Park Place
Painesville, Ohio  44077

For *Amicus Curiae* Sierra Club

RICHARD C. SAHLI
Richard Sahli Law Office, LLC
981 Pinewood Lane
Columbus, Ohio  43230-3662

NATHAN D. MATTHEWS
2101 Webster Street, Suite 1300
Oakland, CA  94612

For Defendant-Appellee Laney
Directional Drilling Co.

THOMAS A. KNOTH
J. WRAY BLATTNER
Thompson Hine LLP
10050 Innovation Drive, Suite 400
Miamisburg, Ohio  45342

For Defendant-Appellee Pretec
Directional Drilling, LLC

JOSEPH P. KONCELIK
ANTHONY R. PETRUZZI
MELISSA Z. KELLY
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio  44113-7213

For Defendant-Appellee Atlas
Trenchless, LLC

PHILIPS J. VALLAKALIL
Atlas Trenchless, LLC
520 S. 6th Avenue
Mansfield, TX  75054

KEVIN L. MURPHY
J. JEFFREY LANDEN
MICHAEL S. JONES
MURPHY LANDEN JONES PLLC
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY  41017-0534

*Hoffman, P.J.*

**{¶1}** Appellant State of Ohio, ex rel. Dave Yost, Ohio Attorney General, appeals the judgment of the Stark County Common Pleas Court dismissing its complaint against Appellees Rover Pipeline, LLC; Mears Group, Inc.; Pretec Directional Drilling, LLC; Laney Directional Drilling Co.; Atlas Trenchless, LLC; and B&T Directional Drilling, Inc.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On July 19, 2018, Appellant filed a third amended complaint, the dismissal of which is the entry appealed from in the instant action. The complaint alleged Appellees illegally discharged millions of gallons of drilling fluids into Ohio's waters, causing pollution and degrading water quality across the state during construction of the Rover Pipeline, a 713-mile interstate natural gas pipeline crossing 18 Ohio counties. Appellee Rover was the owner/operator of the drilling operation for construction of the pipeline. The remaining Appellees were subcontractors hired by Rover to perform horizontal-directional drilling related to construction of the pipeline. Appellant sought civil penalties and injunctive relief.

**{¶3}** Specifically, Appellant's complaint alleged the following:

Count one: Appellees discharged pollutants (drilling fluids) into the waters of the state without point source NPDES permits.

Count two: Appellee Rover failed to obtain a necessary storm water permit for its storm water discharges.

Count three: Appellees violated Ohio's general water quality standards (unpermitted drilling fluid discharges and storm water discharges into waters of the state).

Count four: Appellees violated Ohio's wetland water quality standards by unpermitted drilling fluid discharges into wetlands.

Count five: Appellee Rover violated the Director of the EPA's orders by failing to obtain coverage or submit a notice of intent to obtain coverage for a Construction Storm Water Permit.

Count six: Appellee Rover violated the hydrostatic permit laws.

Count seven: Appellee Rover engaged in activity from February 14, 2017 through May 15, 2017, without the state 401 water quality certification.

{¶4} Appellees moved to dismiss the complaint pursuant to Civ. R. 12(B)(1) and (6), raising four basic arguments.

{¶5} First, Appellees argued Appellant's failure to act within one year on Rover's November 16, 2016, application for the State to issue a §401 certification under the federal Clean Water Act resulted in the State waiving its power to impose conditions and enforce environmental requirements for the pipeline project as a matter of federal law.

{¶6} Second, Appellees argued Rover received all necessary regulatory approvals from FERC (Federal Energy Regulatory Commission). They argued Appellant participated in the preparation of an Environmental Impact Statement (EIS) as a part of the process of obtaining FERC approval, and failed to identify additional State permitting requirements through the EIS process.

{¶7} Third, Appellees argued the State's claims are preempted by the Natural Gas Act, and the trial court therefore lacked subject matter jurisdiction.

{¶8} Fourth, Appellees argued the State's claims are an improper collateral attack on FERC's orders approving the pipeline project.

{¶9} Appellant responded Counts 1-6 were not subject to Section 401 certification. As to Count Seven, Appellant argued waiver did not apply because Rover reapplied for Section 401 certification on February 23, 2017, and the State granted the revised request on February 24, 2017.

{¶10} The trial court granted Appellees' motion to dismiss on March 12, 2019. The court found by failing to act on Rover's November 16, 2015, request for 401 certification, Appellant waived its rights under the Clean Water Act. The court found the resubmission of the request for certification on February 23, 2017, did not save the State from waiver, as the request was resubmitted outside the one-year period for action on the initial submission.

{¶11} It is from the March 12, 2019 judgment of the trial court Appellant prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT HELD THAT, UNDER THE CLEAN WATER ACT, 33 U.S.C. 1341, THE STATE OF OHIO WAIVED ALL OF ITS WATER POLLUTION AUTHORITY OVER ENVIRONMENTAL VIOLATIONS OCCURRING DURING THE CONSTRUCTION OF ROVER'S INTERSTATE PIPELINE.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND, IN A FOOTNOTE, THAT EVEN WITHOUT WAIVER, THE OTHER DEFENSES RAISED BY ROVER AND ITS CONTRACTORS INCLUDING

PREEMPTION BARRED THE STATE OF OHIO'S COUNTS ONE THROUGH SIX.


I.

**{¶12}** Appellant argues the court erred in finding its failure to act in a timely manner on Rover's application for Section 401 certification waived its rights to enforce Ohio's Clean Water Act in regards to the violations alleged in Counts One through Six of its third amended complaint.[1]

**{¶13}** The trial court dismissed the complaint pursuant to Civ. R. 12(B)(1), lack of subject matter jurisdiction and Civ. R. 12(B)(6), failure to state a claim upon which relief could be granted. An order granting a Civ.R. 12(B)(1) or a 12(B)(6) motion to dismiss is subject to de novo review. *Moody v. Frazeysburg,* 5th Dist. Muskingum No. CT2005-0037, 167 Ohio App.3d 106, 2006-Ohio-3028, 854 N.E.2d 212, ¶ 9; *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In determining whether the plaintiff has alleged a cause of action sufficient to withstand a Civ.R. 12(B)(1) motion to dismiss, a court is not confined to the allegations of the complaint and may consider material pertinent to the inquiry without converting it into a motion for summary judgment. *Moody, supra, citing Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526, paragraph one of the syllabus (1976).

**{¶14}** The Federal Clean Water Act specifically reserves to the states the right to adopt and enforce standards and requirements regarding pollutants in its waterways:

---

[1] Appellant states in its brief, "While the State disagrees with the conclusion below that it waived Count Seven, the State seeks review of the trial court's dismissal of the water pollution claims alleged in Counts One through Six only." Brief of Appellant, page 6.

Except as expressly provided in this chapter, nothing in this chapter shall (1) preclude or deny the right of any State or political subdivision thereof or interstate agency to adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or (B) any requirement respecting control or abatement of pollution; except that if an effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance is in effect under this chapter, such State or political subdivision or interstate agency may not adopt or enforce any effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance which is less stringent than the effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance under this chapter; or (2) be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States.

{¶15} 33 U.S.C. 1370.

{¶16} Ohio has delegated to its Director of Environmental Protection the authority to promulgate rules and regulations, including issuing permits, concerning the discharge of pollutants into the State's waters. R.C. 6111.03. These rules and regulations are found in Ohio Administrative Code Chapter 3745.

{¶17} The Federal Clean Water Act further provides any project in which discharge of a pollutant into navigable waters occur must receive certification from the

state in which the discharge will originate.   This certification, referred to as the "401 certification," is governed by 33 U.S.C. §1341(a)(1), which provides:

Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, *which may result in any discharge into the navigable waters*, *shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate,* or, if appropriate, from the interstate water pollution control agency having jurisdiction over the navigable waters at the point where the discharge originates or will originate, that any such discharge will comply with the applicable provisions of sections 1311, 1312, 1313, 1316, and 1317 of this title. In the case of any such activity for which there is not an applicable effluent limitation or other limitation under sections 1311(b) and 1312 of this title, and there is not an applicable standard under sections 1316 and 1317 of this title, the State shall so certify, except that any such certification shall not be deemed to satisfy section 1371(c) of this title. Such State or interstate agency shall establish procedures for public notice in the case of all applications for certification by it and, to the extent it deems appropriate, procedures for public hearings in connection with specific applications. In any case where a State or interstate agency has no authority to give such a certification, such certification shall be from the Administrator. *If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a*

*reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application.* No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence. No license or permit shall be granted if certification has been denied by the State, interstate agency, or the Administrator, as the case may be. (Emphasis added).

**{¶18}** 33 U.S.C. § 1341(d) further provides:

Any certification provided under this section shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations and other limitations, under section 1311 or 1312 of this title, standard of performance under section 1316 of this title, or prohibition, effluent standard, or pretreatment standard under section 1317 of this title, and with any other appropriate requirement of State law set forth in such certification, and shall become a condition on any Federal license or permit subject to the provisions of this section.

**{¶19}** "The plain language of Section 401 outlines a bright-line rule regarding the beginning of review: the timeline for a state's action regarding a request for certification

'shall not exceed one year' after receipt of such request.'" *New York State Dept. of Environmental Conservation v. Fed. Energy Regulatory Commission*, 884 F.3d 450, 455 (2nd Cir. 2018). Further, the withdrawal and resubmission of requests for certification does not extend the time beyond one year from the original request, as resubmissions of requests involving the same project are not independent requests, subject to a new period of review. *Hoopa Valley Tribe v. Fed. Energy Regulatory Commission*, 913 F.3d 1099, 1104 (D.C. Cir. 2019), *reh'g denied*, 2019 WL 3928669.

**{¶20}** It is undisputed in this case Appellant failed to act on Rover's original certification request within one year of November 16, 2015. Further, while Appellant appears to have abandoned on appeal its argument the resubmission of the certification request on February 23, 2017, restarted the one-year time period, pursuant to *Hoopa Valley, supra,* we find the trial court did not err in finding the resubmission did not restart the one year period within which the State must act on a request for certification.

**{¶21}** Appellant first argues Section 401(d)(1)'s language stating the certification "shall" set forth any conditions in a timely certification has been interpreted by the courts to read "may." Appellant argues pursuant to O.A.C. 3745-32-02(A), Section 401 certification applies solely to fill dirt, and does not apply to discharge of drilling fluids or stormwater.

**{¶22}** Appellant cites this court to *PUD No. 1 of Jefferson County v. Washington Dept. of Ecology,* 511 U.S. 700, 713-714 (1994), and *Great Basin Mine Watch v. Hankins,* 456 F3d 955, 963 (9th Cir. 2006) in support of its argument we should interpret the language of Section 401(d)(1) to read "may," thus reserving their rights over the types of effluents set forth in counts one through six of the complaint.

{¶23} We find these cases distinguishable from the issue presented in the instant case. *PUD No. 1* dealt with the question of whether a State could only impose water quality limitations specifically tied to a discharge. In finding Section 401(d)(1) allowed a state to impose water quality standards to other types of activities not involving discharges, the United States Supreme Court held the states "may condition certification upon any limitations necessary to ensure compliance with state water quality standards." *Id.* at 713-714. In *Great Basin Mine Watch,* the court held, "*PUD No. 1* merely holds that states *may* set minimum flow standards as part of section 401 certification requirements; it does not hold that states *must* do so." 456 F.3d at 963. However, the issue in *Great Basin* was not whether the state could waive its rights to enforce its water pollution statutes by failing to timely act on a certification or to include all types of pollution in its certification process, but rather whether Congress can force a state to issue a 401 certification or to include specific conditions when it does so. Neither of these cases stand for the proposition the clear language of the statute should be changed from "shall" to "may" when considering the issue of whether a state has waived its right to participate in the certification process.

{¶24} Appellant also cites this court to Ohio Administrative Code 3745-32-02(A) which provides, "Any applicant for a federal license or permit to conduct any activity which may result in a discharge of dredged or fill material to a water of the state shall apply for and obtain a 401 certification from Ohio EPA." Appellant argues pursuant to this state administrative code section, 401 certification in Ohio only applies to the discharge of dredged or fill material, and thus does not apply to the types of discharges in counts one through six of the complaint, which are governed by other regulatory schemes in Ohio.

**{¶25}** However, we note 33 U.S.C. §1341(a)(1) is not limited to dredged or fill material, but specifically applies to any discharge into the navigable waters. Further, 33 U.S.C. §1341(d) provides the certification "shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations and other limitations," again without limiting the certification process to dredged or fill material.

**{¶26}** A state receiving a Section 401 application has four options: it may grant a certificate without imposing any additional conditions, grant it with additional conditions, deny it, or waive its right to participate in the process. *Sierra Club v. State Water Control Bd.*, 898 F.3d 383, 388 (4th Cir. 2018). If we accept Appellant's argument Ohio Administrative Code 3745-32-02(A) demonstrates Ohio's participation in the certification process is limited solely to activities which result in the discharge of dredged or fill material into the waters of the state, then Ohio has waived its right to participate in the certification process as to all activities other than those involving dredged and fill material, despite the clear language of the United States Code allowing much broader participation. As Appellee Rover states in its brief, "In short, States have choices; and their choices have consequences." Brief of Appellees Rover Pipeline LLC and Mears Group, Inc., page 21.

**{¶27}** Appellant argues it could not anticipate the extent of the types of pollution the pipeline project would generate at the time of the certification request. The record reflects the Ohio EPA participated in the preparation of the Environmental Impact Statement in the instant case, which provided a sweeping exploration of the scope of the pipeline project. From its active participation in the EIS process, Appellant should have been aware of the types of pollution the project would be likely to generate. Further, the

State could have simply denied the certification based on a lack of information, or granted it by imposing additional conditions subjecting all types of discharge to compliance with the laws of Ohio. *See Sierra Club, supra.* However, the state failed to act on the certification request in a timely manner, thereby waiving its right to participation in the certification process.

{¶28} Appellant also argues the trial court's interpretation of the certification rules runs contrary to the overarching intent of the Federal Clean Water Act. We agree with the findings of the trial court to the contrary:

> The holding of this Court in no way stands for the position that the State of Ohio does not have rights relative to the construction of a natural-gas pipeline through the State and a right to impose regulations to curb disastrous environmental impacts on its waterways as a result of such construction. Nor does this holding provide natural gas companies *carte blanche* to perform drilling and other construction related to natural-gas lines regardless of the environmental impact of such action. Rather, in order to assert its rights, the State of Ohio is required to act in conformance with the Clean Water Act, as opposed to instigating litigation as a collateral attack subsequent to the completion of a pipeline. Moreover, the Court finds that, despite the State of Ohio's inability to pursue the instant litigation, all aspects of the construction of the pipeline, including the discharging of pollutants into waterways, were subject to oversight by FERC, which responded to environmental concerns presented by the State of Ohio,

including, but not limited to, halting construction operations. As such, any alleged discharges were still subject to Federal Regulations, including the Clean Water Act.

**{¶29}** Judgment Entry, March 12, 2019, pp. 9-10.

**{¶30}** Finally, Appellant argues the court erred in dismissing count six of its complaint regarding hydrostatic water, because Appellees did obtain a permit concerning hydrostatic water from the Ohio EPA, which was listed in the Environmental Impact Statement.

**{¶31}** We find a state's 401 waiver cannot be undone by agreement of the parties. *See Hoopa Valley, supra,* at 1105 (state waived participation in certification despite applicant's agreement with state in withdrawal and resubmission of certification request in attempt to extend one year time deadline). The mere fact Appellees chose to obtain a certificate from the state, as set forth in the EIS, does not change the fact the state waived its right to enforce its hydrostatic water laws by failing to include such permit requirement in a timely issued 401 certificate.

**{¶32}** The first assignment of error is overruled.

II.

**{¶33}** Any discussion of Appellant's second assignment of error is rendered moot by our disposition of the first assignment of error.

**{¶34}** The judgment of the Stark County Common Pleas Court is affirmed.

By: Hoffman, P.J.

Wise, John, J.  and

Delaney, J. concur