[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. Rover Pipeline, L.L.C.*, Slip Opinion No. 2022-Ohio-766.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-766

THE STATE EX REL. YOST, ATTY. GEN., APPELLANT, *v.* ROVER PIPELINE, L.L.C., ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. Rover Pipeline, L.L.C.*, Slip Opinion No. 2022-Ohio-766.]**

*Clean Water Act—33 U.S.C. 1341(A)(1)—State certification—One-year period during which the state must act on a request for certification under 33 U.S.C. 1341(A)(1) begins when application is submitted, not when it is deemed complete—State waives its rights or authority only with respect to activities approved under federal application when it fails to act on 33 U.S.C. 1341(A)(1) application—Trial court's dismissal was improper because it failed to determine whether any of allegations brought by state address issues outside the contours of the federal application.*

(No. 2020-0091—Submitted January 26, 2021—Decided March 17, 2022.)

APPEAL from the Court of Appeals for Stark County,

No. 2019CA00056, 2019-Ohio-5179.

---

**DONNELLY, J.**

**{¶ 1}** Appellee Rover Pipeline, L.L.C., sought a license to construct an interstate pipeline that crossed several counties in Ohio. As required by Section 401 of the Clean Water Act ("section 401"), 33 U.S.C. 1341(a)(1), Rover applied for certification from the state of Ohio that any discharge into the state's navigable waters would comply with applicable provisions of federal law. When the pipeline discharged pollutants into surrounding waters, the state of Ohio sued Rover and other companies involved in building the pipeline. Rover argued that the state's complaint should be dismissed because the state had waived its ability to participate in the certification process when it did not respond to Rover's application within one year. We agree. The waiver applies, however, only to issues that are related to the section 401 certification, the contours of which have not been established by the trial court. Accordingly, we reverse, and we remand with instructions to determine whether the violations alleged by the state can be prosecuted or whether the state has waived the right to take action.

## FACTS AND PROCEDURAL HISTORY

**{¶ 2}** Appellant, the Ohio Attorney General ("the state"), sought injunctive relief and other remedies after pollutants were discharged from the pipeline into Ohio's navigable waters. On July 19, 2018, in a third amended complaint, the state alleged, among other things, that Rover and the other appellees, Pretec Directional Drilling, L.L.C.; Laney Directional Drilling Company; Atlas Trenchless, L.L.C.; Mears Group, Inc.; and B&T Directional Drilling, Inc., (collectively, "the defendants") had "illegally discharged millions of gallons of drilling fluids to Ohio's waters, causing pollution and degrading water quality on numerous occasions and in various counties across the state." The state alleged seven specific counts:

2

(1) "Defendants discharged pollutants to waters of the state without point source [National Pollutant Discharge Elimination System] permits."

(2) "Rover failed to obtain a general storm water permit for its storm water discharges."

(3) "Defendants violated Ohio's general water quality standards."

(4) "Defendants violated Ohio's wetland water quality standards."

(5) "Rover violated the [Ohio Environmental Protection Agency] Director's orders."

(6) "Rover violated the hydrostatic permit."

(7) "Rover engaged in activities without effective certification."

The state also asked the trial court to retain jurisdiction "to carry out its judgment" and such other relief as may be just.

{¶ 3} Rover and Mears filed a joint motion to dismiss the complaint; the other defendants filed separate motions to dismiss. In an order issued on March 12, 2019, the trial court noted that the motions were largely duplicative and therefore focused on the motion submitted by Rover and Mears, because "the claims arising against the other defendants are a result of actions taken at the behest of Rover." The trial court granted the various Civ.R.12(B) motions to dismiss, stating:

> On November 16, 2015, the State of Ohio received a 401 Certification request from Rover. As such, the State of Ohio had until November 16, 2016, to "act" on such request pursuant to Section 401 of the Clean Water Act. * * *
>
> * * * The Court finds that, in order to assert its rights under the Clean Water Act, the State of Ohio was required to "act," i.e., grant or deny, upon Rover's November 16, 2015, 401 Certification request on or before November 16, 2016. Its failure to do so, resulted in a waiver of rights.

The court concluded that it did not have jurisdiction over the matter, because the state had "failed to act upon rights specifically given to it pursuant to the Clean Water Act within the Act's specified period of time."

**{¶ 4}** The state appealed. The court of appeals affirmed, stating that it "is undisputed in the case [that the state] failed to act on Rover's original certification request within one year of November 16, 2015." 2019-Ohio-5179, 150 N.E.3d 491, ¶ 20. With respect to the extent of the waiver, the court of appeals essentially deferred to the findings of the trial court. Having overruled the first assignment of error, which was related to the issue of waiver by the state, the court of appeals deemed a second assignment of error addressing other asserted defenses moot.

**{¶ 5}** The state timely appealed, and we accepted the appeal. 158 Ohio St.3d 1482, 2020-Ohio-1487, 143 N.E.3d 520.

### ANALYSIS

**{¶ 6}** This case is before us based on the trial court's grant of the defendants' motions to dismiss under Civ.R. 12(B)(1) & (6). We review dismissals pursuant to Civ.R. 12(B)(6) de novo, *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, 95 N.E.3d 382, ¶ 10, presume the truth of all material factual allegations in the complaint, *id.*, and make all reasonable inferences in the state's favor, *State ex rel. Bohlen v. Halliday*, 164 Ohio St.3d 121, 2021-Ohio-194, 172 N.E.3d 114, ¶ 12, citing *State ex rel. Zander v. Judge of Summit Cty. Common Pleas Court*, 156 Ohio St.3d 466, 2019-Ohio-1704, 129 N.E.3d 401, ¶ 4. We also review dismissals under Civ.R. 12(B)(1) de novo. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 12.

**{¶ 7}** The state's second proposition of law states: "The one-year time limit in Section 401 of the Clean Water Act begins to run only once the applicant submits a completed application." We disagree.

{¶ 8} Section 401 states:

> If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application.

33 U.S.C. 1341(a); *see Sierra Club v. State Water Control Bd*., 898 F.3d 383, 388 (4th Cir.2018) (after receiving a section 401 application, a state has four options: grant a certificate without conditions, grant it with conditions, deny it, or waive its right to participate in the process).

{¶ 9} The state encourages us to rely on *AES Sparrows Point LNG, L.L.C. v. Wilson*, 589 F.3d 721, 729 (4th Cir.2009), which deferred to an Army Corps of Engineers' determination that the clock did not begin to run until a completed section 401 application was submitted. The state argues that an application is not valid unless it is complete, which had been the practice of the Federal Energy Regulatory Commission ("FERC") until August 1985, *see California ex rel. State Water Resources Control Bd. v. Fed. Energy Regulatory Comm.*, 966 F.2d 1541, 1552 (9th Cir.1992).

{¶ 10} Rover, Pretec Directional, and Mears Group argue that allowing the state to determine when the one-year clock starts based on its own determination whether an application is complete gives the state too much discretion. In our view, it is discretion that is not needed, because the state can reject an application as incomplete or for another legitimate reason.

{¶ 11} Other courts have concluded that the clock starts running upon the submission of an application. In *New York State Dept. of Environmental Conservation v. Fed. Energy Regulatory Comm.*, 884 F.3d 450, 456 (2d Cir.2018),

the court specifically addressed the issue before us and concluded that because the statute does not refer to "complete" applications, the one-year period begins upon the submission of an application. *See California State Water Resources Control Bd.* at 1552 (the court noted that the FERC had issued a new rule on February 11, 1987, regarding section 401 certification, that stated that the "one-year period for waiver would commence on the date the certifying agency received the certification request").

{¶ 12} We conclude that the one-year period during which the state must act on a request for certification under section 401 begins when the application is submitted, not when it is deemed complete. Though we do not rely on it, we note that the federal Environmental Protection Agency recently stated that "the section 401 certification process begins on the date when the certification request is received by a certifying authority." Clean Water Act Section 401 Certification Rule, 85 Fed.Reg. 42210, 42243 (July 13, 2020); *see also* 40 C.F.R. 121.6(d) ("The Federal agency may extend the reasonable period of time at the request of a certifying authority or a project proponent, but in no case shall the reasonable period of time exceed one year from receipt"). It is clear from the record, and the parties' failure to dispute it, that more than one year had passed between the date that the application was filed and the date that the state approved it. Accordingly, we agree with the court of appeals that "the state failed to act on the certification request in a timely manner, thereby waiving its right to participation in the certification process." 2019-Ohio-5179, 150 N.E.3d 491, ¶ 27.

{¶ 13} We turn now to the state's first proposition of law, which addresses the consequences of the state's waiver of its right to participate in the certification process. The state argues that "[a] State's decision not to act on a Section 401 water-quality certification has no effect on the State's power to enforce state water-pollution laws." We disagree. Frankly, it is not plausible that the state's failure to act would not have any effect, and the state concedes that point.

{¶ **14**} According to 33 U.S.C. 1341(a)(1), "the certification requirements of this subsection shall be waived with respect to such Federal application" if the state fails to act on a request for certification. The state's failure to act on the section 401 application means (quite plainly) that the state waived its rights or authority only with respect to the federal application. But the vast bulk of the state's rights and authority—those that apply to matters not encompassed by the section 401 application—remain intact. How could it be otherwise?

{¶ **15**} Rover, Pretec Directional, and Mears Group argue that the state's "failure to timely act on the certification request means that it cannot enforce its water-pollution laws as to the pipeline construction's water-quality impacts." But this argument is contradicted by the Clean Water Act itself: "[N]othing in this chapter shall (1) preclude or deny the right of any State * * * to adopt or enforce (A) any standard or limitation respecting discharge of pollutants." 33 U.S.C. 1370. The Clean Water Act also states that "[n]othing in this section shall be construed to limit the authority of any department or agency pursuant to any other provision of law to require compliance with any applicable water quality requirements." 33 U.S.C. 1341(b). *See Natl. Assn. of Home Builders v. United States Army Corps of Engineers*, 453 F.Supp.2d 116, 134 (2006) ("the authority provided to the states to control water quality is not usurped by Section 401").

{¶ **16**} Because this action was dismissed pursuant to Civ.R. 12(B)(6), a full record has not been developed and we do not know the extent to which the claims asserted by the state fall within the four corners of the federal application. The trial court concluded that "the State of Ohio can prove no set of facts entitling it to its requested relief." We disagree. We consider it possible, even likely, that given the opportunity to present evidence, the state will be able to establish that certain of its allegations fall outside the contours of the Section 401 certification.

{¶ **17**} For example, the state contends that "[b]ecause *none* of the Defendants' water pollution discharges are from fill placement, all of the violations

are outside the scope of the 401 certification." (Emphasis sic.) That the discharges are not "fill placement" is a material factual assertion that must be presumed to be true when considering a motion to dismiss. Whether the discharges are outside the scope of the 401 certification is a legal determination that the trial court needs to address. Similarly, the state contends that the flow of storm water is governed by the federal and state environmental-protection agencies, not by the 401 certification. At a minimum, the trial court must determine whether these assertions can be proved. If they can, the alleged violations are outside the contours of the 401 certification and waiver does not apply.

{¶ 18} "In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Ohio Bur. of Workers Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12. As mentioned above, we are not convinced that the state can prove no set of facts in support of its claims.

### CONCLUSION

{¶ 19} We conclude that the state waived its right to participate with respect to certification under 33 U.S.C. 1341 and, therefore, that the state cannot assert rights related to that certification. That waiver does not extend, however, to the state's rights and authority that are unrelated to that certification. Accordingly, we reverse the judgment of the court of appeals, and we remand to the trial court to determine whether any of the allegations in the seven specific counts set forth by the state address issues that are outside the contours of the Section 401 certification.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and STEWART and BRUNNER, JJ., concur.

FISCHER, J., concurs in part and dissents in part, with an opinion joined by

KENNEDY and DEWINE, JJ.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 20} I agree with the conclusion set forth in the majority opinion that the one-year period during which the state must act on a request for certification under Section 401 of the Clean Water Act ("section 401"), 33 U.S.C. 1341(a)(1), begins when the application is submitted, not when the application is deemed complete. However, I respectfully disagree with the conclusion set forth in the majority opinion that the contours of the section 401 certification have not been established in this case.

### I. The Parties' Arguments

{¶ 21} In this appeal, the state argues that the failure to timely act on a certification request waives only the state's ability to object if conduct that it has thus allowed to proceed under the certification causes pollution. In connection with this argument, the state focuses on the phrase "with respect to such Federal application" of section 401(a)(1). *See* 33 U.S.C. 1341(a) (providing that if the state fails to act on a request for certification, the certification requirements in that section "shall be waived with respect to such Federal application"). It argues that the waiver provision of section 401 applies only to discharges within the scope of a federal application and thus the state may enforce its laws in response to any discharge that is beyond the scope of the certification at issue. As it pertains to this case, the state asserts that appellee, Rover Pipeline, L.L.C. ("Rover"), was permitted to use only naturally occurring, nontoxic bentonite clay and water when drilling and that the state's waiver applies only to the discharge of this material into wetlands. It argues that, because nothing in the application indicated that Rover would discharge diesel-laced fluid, the discharge of that fluid is beyond the scope of the application and the state is permitted to enforce its laws in regard to that discharge.

**{¶ 22}** The state further argues that it has the general power to enact and enforce water-pollution laws and that federal approval under section 401 does not free the applicant from having to comply with state-issued permits and laws. It asserts that the Clean Water Act, 33 U.S.C. 1251 et seq., does not contain a clear statement of Congress's intention to preempt state water laws and that the Clean Water Act should not be read to impermissibly require the state to follow federal law in this area.

**{¶ 23}** Rover responds that section 401 applies more broadly than the state argues. Rover asserts that section 401 requires the state to consider the eventuality of any discharge into state waters that may result from any activity under the federal license or permit. Rover argues that the state's waiver applies to any discharge that could result from the activity for which the applicant sought a permit. In response to the state's preemption argument, Rover asserts that the Clean Water Act is a valid exercise of Congress's power under the Commerce Clause of the United States Constitution and that there are no constitutional concerns arising from interpreting section 401 to impose a complete waiver of a state's ability to enforce its laws.

**II. Section 401 Certification Applies to "Any Discharge" that "May Result" from the Activity, Resulting in a Broad Waiver**

**{¶ 24}** Section 401 provides: "If the State * * * fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application." 33 U.S.C. 1341(a). Relying on the reference to the federal application in the statute, the majority concludes that "[t]he state's failure to act on the section 401 application means (quite plainly) that the state waived its rights or authority only with respect to the federal application." Majority opinion, ¶ 14. This conclusion, however, does not answer the question before us; it is undisputed that the waiver relates to the

application for a federal permit. The issue in this case turns on which activities performed as a result of the application are encompassed within the scope of the waiver. To answer that question, it is necessary to look at other portions of section 401.

{¶ 25} In part, section 401 as codified in 33 U.S.C. 1341(a)(1), provides:

> Any applicant for a Federal license or permit to conduct *any activity* * * * which *may result* in *any discharge* into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate * * * that any such discharge will comply with the applicable provisions of sections 1311, 1312, 1313, 1316, and 1317 of this title.

(Emphasis added.) Further, the statute requires that a state's section 401 certification "shall set forth *any* effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations and other limitations * * * and with *any other* appropriate requirement of State law set forth in such certification." (Emphasis added.) 33 U.S.C. 1341(d). The limitations set forth in the state's section 401 certification "shall become a condition on" the federal permit. *Id.*

{¶ 26} The United States Supreme Court has held that these provisions authorize the state to impose conditions and requirements related not just to the specific discharge proposed in the federal application for a permit but rather to the entire activity for which the permit is being sought. *PUD No. 1 of Jefferson Cty. v. Washington Dept. of Ecology*, 511 U.S. 700, 711-712, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994). Section 401, the court explained, "allows the State to impose 'other

11

limitations' on the project in general to assure compliance with various provisions of the Clean Water Act and with 'any other appropriate requirement of State law.' " *Id*. at 711; *see also id.* at 712 (section 401(d) "is most reasonably read as authorizing additional conditions and limitations on the activity as a whole").

{¶ 27} The state would have this court construe the effect of its failure to attach conditions to the permit much more narrowly. It asserts that by failing to act within the required one-year timeframe, it waived the ability to object only to the discharge method authorized by the permit. If, however, as the United States Supreme Court has explained, section 401 empowers the state to attach conditions related to any part of the proposed activity, then the waiver of the opportunity to impose requirements on the federal project under that same provision must necessarily apply just as broadly.

{¶ 28} As the state acknowledges, Rover applied to construct an interstate natural-gas pipeline. Thus, the "activity" contemplated under section 401 in this case was construction of the pipeline. Both the state and Rover contemplated that this activity could result in the discharge of materials into Ohio waters. The state argues that the only discharge contemplated involved naturally occurring nontoxic bentonite clay and water, while Rover argues that other discharges, including discharges involving diesel-laced fluid, were contemplated during the application process. What type of discharges were contemplated is irrelevant to this appeal, however, for the section 401 certification applies to "any discharge" that "may result" from the activity. There, accordingly, is no reason to remand this case for the trial court to determine whether the discharges at issue are outside the scope of the section 401 certification, as instructed in the majority opinion. *See* majority opinion at ¶ 19. Because the federal application at issue in this case permitted Rover's activity of building the pipeline, the state waived all certification requirements with respect to that application, including any requirements relating

to "any discharge" resulting from the activity, whether that discharge involved natural fluids or diesel-laced fluids.

{¶ 29} I would also conclude that the state's preemption argument is unavailing. It is well established that under the Commerce Clause, U.S. Constitution, Article I, Section 8, cl. 3, the federal government "has dominion, to the exclusion of the States, over navigable waters of the United States." *Islander E. Pipeline Co., L.L.C. v. Connecticut Dept. of Environmental Protection*, 482 F.3d 79, 92 (2d Cir.2006), citing *Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 334, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958). But "[b]y enacting the [Clean Water Act], Congress provided states with an offer of shared regulatory authority." *Id.*, citing *Arkansas v. Oklahoma*, 503 U.S. 91, 101, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992) (stating that the Clean Water Act "anticipates a partnership between the States and the Federal Government, animated by a shared objective").

{¶ 30} As the Supreme Court of the United States has established, the Clean Water Act is a valid exercise of Congress's powers under the Commerce Clause, and in regard to that Act, Congress has the power to offer states the choice of regulating activity according to federal law or having state law preempted by federal law. *See New York v. United States*, 505 U.S. 144, 167-168, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Moreover, this is not a situation in which Congress requires states to enact a certain piece of legislation. Instead, Congress has effectively delegated to the states the option to exercise some authority to enforce state environmental laws that are more stringent or broader than federal laws if the states follow a certain procedure. Significantly, Congress could have completely prevented the states from exercising any authority regarding this interstate-pipeline project. For these reasons, there are no constitutional concerns regarding section 401's broad waiver provision.

### III. The State May Enforce the Hydrostatic Permit

**{¶ 31}** While I would conclude that the state waived all certification requirements with respect to the federal section 401 application, I would note that the state is not entirely barred from raising claims against appellees. Although the state waived participation in the federal permitting process, the Federal Energy Regulatory Commission ("FERC") required Rover to obtain a hydrostatic permit from the state in order for FERC to sign off on construction. The Fifth District Court of Appeals concluded that because of the state's section 401 waiver, it could not enforce the separately obtained hydrostatic permit. 2019-Ohio-5179, 150 N.E.3d 491, ¶ 31. However, because the hydrostatic permit was obtained independently of the section 401 certification process at the behest of FERC, I would conclude that the state may seek to enforce the terms of the hydrostatic permit, and I would reverse the Fifth District's decision on this limited basis.

**{¶ 32}** Finally, I would also note that the state's waiver in regard to the section 401 certification does not necessarily mean that the state is without a remedy for damages from violations of the federal permit. As the Supreme Court of the United States has noted, the state may still sue for violations of federal law. *United States Dept. of Energy v. Ohio*, 503 U.S. 607, 613, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992), fn. 5 (states may bring a suit under the Clean Water Act pursuant to the act's citizen-suit provision, 33 U.S.C. 1365). The state's ability to file a suit under the Clean Water Act, coupled with its ability to enforce the hydrostatic permit, means that the state has some tools at its disposal to ensure Rover's compliance with its relevant obligations, despite the state's section 401 waiver.

### IV. Conclusion

**{¶ 33}** I would hold that when the state fails to act within the one-year period specified in section 401 of the Clean Water Act, the state waives its ability with respect to that permit to enforce any conditions that it could have otherwise

14

imposed regarding the discharge of any materials into Ohio water that may have resulted from the permitted activity. In this case, because the state failed to act within the one-year period, it waived its ability in connection with the federal permit to enforce any state laws regarding any discharges resulting from the activity of constructing the pipeline, not just the discharge of naturally occurring nontoxic bentonite clay and water. For these reasons, I would affirm the judgment of the Fifth District Court of Appeals in part, but I would reverse that court's judgment to the extent that it concluded that the state may not enforce the terms of its hydrostatic permit. I accordingly concur in part, and I would order a remand for further proceedings related to the hydrostatic permit.

KENNEDY and DEWINE, JJ., concur in the foregoing opinion.

_____

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Samuel C. Peterson, Deputy Solicitor General, and Aaron S. Farmer, Janean R. Weber, and Amanda M. Ferguson, Assistant Attorneys General, for appellant.

McMahon Degulis, L.L.P., Erin M. McDevitt-Frantz, and Michael S. McMahon; and Gibson, Dunn & Crutcher, L.L.P., William S. Scherman, David DeBold, Ruth Porter, and Matthew Rozen, for appellee Rover Pipeline, L.L.C.

Tucker Ellis, L.L.P., Joseph P. Koncelik, Anthony R. Petruzzi, and Melissa Z. Kelly, for appellee Pretec Directional Drilling, L.L.C.

Thompson Hine, L.L.P., Kip T. Bollin, and Heidi B. Friedman, for appellee Laney Directional Drilling Company.

Ulmer & Berne, L.L.P., Frederic X. Shadley, and David A. Meyer, for appellee Mears Group, Inc.

Dworken & Bernstein Company, L.P.A., Grant Keating, Richard N. Selby II, and Erik L. Walter, for appellee B & T Directional Drilling, Inc.

Murphy Landen Jones, P.L.L.C., Kevin L. Murphy, J. Jeffrey Landen, and Michael S. Jones; and Atlas Trenchless, L.L.C., and Philips J. Vallakalil, for

appellee Atlas Trenchless, L.L.C.

Trent Dougherty and Chris Tavenor, urging reversal for amicus curiae Ohio Environmental Council and Sierra Club.

_____