[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Alford v. Collins-McGregor Operating Co.,* Slip Opinion No. 2018-Ohio-8.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-8

ALFORD ET AL., APPELLANTS, *v.* COLLINS-MCGREGOR OPERATING COMPANY ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Alford v. Collins-McGregor Operating Co.,* Slip Opinion No. 2018-Ohio-8.]

*Oil and gas—Leases—Action seeking partial termination of lease for lessees’ failure to explore or drill at depths below those currently being exploited— Motion to dismiss for failure to state claim properly granted—Ohio does not recognize implied covenant to explore further.*

(No. 2016-1281—Submitted September 26, 2017—Decided January 3, 2018.)

APPEAL from the Court of Appeals for Washington County,

No. 16CA9, 2016-Ohio-5082.

_____

**O'CONNOR, C.J.**

## I. Introduction

**{¶ 1}** Appellants, Linda Griffith Alford, George Alford Jr., Bershelle Alford Giambattista, Joseph Alford, Judith Hanlon Farnsworth, Donna R. Hanlon, and James C. Eutzler (collectively, the "Landowners"), sued appellees, Collins-McGregor Operating Company and Winston Oil Company (collectively, "Collins-McGregor"), seeking the partial termination of an oil and gas lease. The trial court granted Collins-McGregor's motion to dismiss for failure to state a claim and the Fourth District Court of Appeals affirmed.

**{¶ 2}** This appeal requires us to consider whether the Landowners' claim for breach of the implied covenant to explore further is cognizable in Ohio, and if so, the availability of partial horizontal forfeiture as a remedy for such a breach. We conclude that Ohio does not recognize an implied covenant to explore further separate and apart from the implied covenant of reasonable development. We therefore need not reach the issue of remedy.

## II. Relevant Background

**{¶ 3}** The Landowners hold interests in approximately 74 acres of land in Washington County, not far from the Ohio River. The land is subject to an oil and gas lease entered into on September 16, 1980, between the owners of the property at that time and Collins-McGregor.[1] "[T]he sole and only purpose" of the lease is to permit "mining and operating for oil and gas and laying pipe lines, and building tanks, powers, stations, and structures thereon, to produce, save and take care of said products." In return for permission to mine the land, Collins-McGregor committed to make royalty payments based on the amount of gas produced from the land and to deliver a portion of the oil produced from the land to the lessors.

---

[1] Appellee Winston Oil Company was not a party to the original lease. It obtained its interest in the lease by way of an assignment in 1992.

**{¶ 4}** The lease provides that it "shall remain in force for a term of One (1) years from [the effective] date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." It is silent as to certain aspects of drilling and production. For example, the lease does not require production from any specific number of wells or from any particular depth. The lease also does not disclaim the application of any implied covenants.

**{¶ 5}** A well was drilled in 1981 and has produced oil and gas in paying quantities since then from a formation called the Gordon Sand. To date there has not been any production from the land at any depths below the Gordon Sand. The Landowners contend, however, that exploration and production of oil and gas have been occurring near their property from below the Gordon Sand—specifically, from the Marcellus and Utica formations—but Collins-McGregor has failed to explore whether production can be obtained from those deep formations because it does not have the equipment or financial resources required to do so.

**{¶ 6}** On November 20, 2015, the Landowners filed an amended complaint against Collins-McGregor alleging that it has improperly failed to explore or drill for oil at depths below the Gordon Sand. They sought a judgment that the portion of the lease covering depths below the Gordon Sand has terminated because it has either expired or been abandoned and that Collins-McGregor has breached numerous implied covenants. They also sought a judgment quieting title in the Landowners' favor as to the depths below the Gordon Sand. The Landowners have not sought to terminate Collins-McGregor's rights under the lease with respect to the well that has produced oil from 1981 to the present.

**{¶ 7}** Among the implied covenants that the Landowners claim Collins-McGregor has breached are the implied covenant of reasonable development and the implied covenant to explore further. Ultimately, the remedy sought by the Landowners is partial forfeiture of Collins-McGregor's rights under the lease such that all rights to explore for, develop, and exploit resources from depths below the

Gordon Sand revert to the Landowners. Collins-McGregor describes this as horizontal forfeiture (i.e., forfeiture of the right to drill to a particular horizontal layer or formation beneath the surface).

{¶ 8} Collins-McGregor moved to dismiss under Civ.R. 12(B)(6), arguing that Ohio law does not recognize the remedy of horizontal forfeiture. The trial court agreed and dismissed the case, holding that under the plain terms of the lease, the still-productive well drilled in 1981 was sufficient to hold the lease across all acres and at all depths. The Fourth District Court of Appeals affirmed, holding that Ohio law does not recognize partial horizontal forfeiture of oil and gas rights as an available form of relief.

{¶ 9} We accepted the Landowners' discretionary appeal.

### III. Analysis

{¶ 10} We review de novo a decision granting a motion to dismiss under Civ.R. 12(B)(6). *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In conducting this review, we accept as true all factual allegations in the complaint. *Id.* "[T]hose allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor." *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12. To grant the motion, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Id.*

### A. The Implied Covenant to Explore Further

{¶ 11} We begin by addressing the Landowners' second proposition. They argue that the appellate court erred by affirming the dismissal of their amended complaint for failure to state a claim because they alleged a breach of the implied covenant to explore further, and a breach of that covenant may be remedied by horizontal forfeiture. Collins-McGregor raises two principal arguments in response. It argues that Ohio law does not recognize the implied covenant to

4

explore further, and even if it did, partial horizontal forfeiture is not an available remedy for a breach of an implied covenant in an oil and gas lease. We agree with Collins-McGregor that Ohio does not recognize an implied covenant to explore further.

{¶ 12} Oil and gas leases are contracts, and therefore, " '[t]he rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument.' " *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, 71 N.E.3d 1010, ¶ 9, quoting *Harris v. Ohio Oil Co.,* 57 Ohio St. 118, 129, 48 N.E. 502 (1897). "It is a well-known and established principle of contract interpretation that '[c]ontracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.' " *Lutz*, quoting *Skivolocki v. E. Ohio Gas Co.,* 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. Notwithstanding this principle, we have also long held that oil and gas leases are ordinarily subject to an implied covenant to reasonably develop the land. *See Harris* at paragraph one of the syllabus (recognizing "an implied covenant on part of the lessee that he will drill and operate such number of oil wells on the lands as would be ordinarily required for the production of oil contained in such lands, and afford ordinary protection to the lines").

{¶ 13} The parties can prevent application of the implied covenant of reasonable development by including in the lease "express provisions to the contrary." *Beer v. Griffith*, 61 Ohio St.2d 119, 399 N.E.2d 1227 (1980), paragraph two of the syllabus. For example, the parties can include a general disclaimer of implied covenants. *E.g.*, *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Court of Appeals*, 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836, ¶ 32, 33 (holding that the parties' disclaimer prevented application of an implied covenant). The parties can also describe the development of the land sought by the parties in the terms of the lease itself. *See Ionno v. Glen-Gery Corp.*, 2 Ohio St.3d 131, 133,

443 N.E.2d 504 (1983) ("Thus, where a lease fails to contain any specific reference to the timeliness of development, the law will infer a duty to operate with reasonable diligence"); *see also Kachelmacher v. Laird*, 92 Ohio St. 324, 110 N.E. 933 (1915), paragraph one of the syllabus ("There can be no implied covenants in a contract in relation to any matter that is specifically covered by the written terms of the contract itself").

{¶ 14} Here, the lease does not contain a disclaimer of implied covenants, nor does it otherwise address whether any specific number of wells must be drilled or the depth to which any wells must be drilled. As a result, at least with respect to the matters at issue in this case, the lease is subject to the implied covenant of reasonable development.

{¶ 15} In this proposition, the Landowners raise the implied covenant to explore further, a covenant we have not before considered. The Landowners cite decisions of the Fifth Appellate District, which they claim have recognized the covenant. *See Am. Energy Servs., Inc. v. Lekan*, 75 Ohio App.3d 205, 215, 598 N.E.2d 1315 (5th Dist.1992); *Moore v. Adams*, 5th Dist. Tuscarawas No. 2007AP090066, 2008-Ohio-5953, ¶ 35; *Mauger v. Positron Energy Resources, Inc.*, 5th Dist. Morgan No. 14AP0001, 2014-Ohio-4613, ¶ 65. In the Landowners' view, recognition of the implied covenant to explore further would support the purpose of the lease by encouraging exploration and development of mining activities for the mutual profit of the parties.

{¶ 16} Collins-McGregor argues that although several cases from the Fifth District include the covenant to explore further in a list of commonly accepted covenants, none actually applies the covenant. Importantly, Collins-McGregor argues, these cases do not provide any discussion of what should guide any consideration of a claim that the implied covenant to explore further has been breached. Collins-McGregor also argues that there is no need for the covenant because the covenant of reasonable development provides sufficient protection to

landowners concerning the productive use of the land. Finally, Collins-McGregor points to decisions from the Texas and Oklahoma Supreme Courts, both of which have specifically declined to recognize an independent implied covenant to explore further. *See Sun Exploration & Prod. Co. v. Jackson*, 783 S.W.2d 202 (Tex.1989); *Mitchell v. Amerada Hess Corp.*, 638 P.2d 441 (Okla.1981). Both courts held there was no implied covenant to explore further separate and apart from the implied covenant of reasonable development. *See Sun Exploration* at 204; *Mitchell* at 449.

{¶ 17} We agree with Collins-McGregor. Although the Landowners have an interest in the development of the land, that interest is sufficiently protected by the implied covenant of reasonable development and does not require recognition of a new implied covenant to explore further.

{¶ 18} The purpose of the implied covenant of reasonable development is to protect the lessor's interest in the lease, which is to obtain production and, hence, profits once the right to drill has been granted to the lessee. *Summers Oil and Gas*, Section 17:10 (3d Ed.2008). This protection is needed because oil and gas leases typically provide, as the one here does, that the lessor's compensation is a royalty payment based on the production of oil from the land. *Id.*; *see also Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 16, quoting 1 Brown, Brown & Gillaspia, *The Law of Gas and Oil Leases*, Section 6.01 (2d Ed.2014) (" 'The principal or basic consideration for a [mineral rights] lease is the agreement by the lessee to develop the premises for oil and gas and pay royalties thereon to the lessor' ").

{¶ 19} The first case in which we recognized the covenant reflected this purpose. In *Harris*, 57 Ohio St. 118, 126, 48 N.E. 502, the lessor was entitled to receive a royalty payment based on the amount of oil produced from the land. When wells on adjacent land presented a risk of draining the oil from under the lessor's property, the lessor demanded that the lessee drill additional wells. The lessee refused and then sued to prevent the lessor from drilling new wells himself.

We agreed with the lessor, holding that "under an oil lease which is silent as to the number of wells to be drilled, there is an implied covenant that the lessee shall reasonably develop the lands, and reasonably protect the lines." *Id.* at 127.

{¶ 20} More recently, we have applied the implied covenant of reasonable development to protect the lessor's interest in production even when the lessor receives annual payments under the lease as advance payments of royalties. In *Ionno*, 2 Ohio St.3d 131, 443 N.E.2d 504, the lease provided that annual payments would be credited against future royalties, and the lessees argued that these payments prevented application of the covenant because the lease gave the lessees the freedom to choose whether to develop the land as long as the payments are made. We disagreed. We held that despite the annual advance-royalty payments, "there is manifestly an implied covenant on the part of the lessees that they will work the land with ordinary diligence, not simply for their own advantage and profit, but also so that lessors may secure the actual consideration for the lease, *i.e.*, the production of minerals and the payment of a royalty on the minerals mined." *Id.* at 134. We recognized that if annual payments were deemed to be a sufficient substitute for timely development, we would "reward mere speculation without development, effort, or expenditure on the part of the lessees" and "allow a lessee to encumber a lessor's property in perpetuity merely by paying an annual sum." *Id.*

{¶ 21} On the other hand, the implied covenant of reasonable development is not entirely one-sided in favor of landowners. We have recognized that lessees face various risks in any oil and gas lease, including substantial upfront investments with an uncertain potential for returns. We have therefore held that the covenant imposes on the lessee only the obligation to act as a reasonably prudent operator would as it develops the land under the lease. *See Harris*, 57 Ohio St. at 127, 48 N.E. 502 ("The development and protection of lines which is thus implied when the lease is silent is such as is usually found in the same business of an ordinarily prudent man—neither the highest nor lowest, but about medium or average").

Whether the lessee has breached the implied covenant of reasonable development should be determined by the facts and circumstances of each particular case. *See Summers Oil and Gas*, Section 17:15.

**{¶ 22}** In light of this, the Landowners' interests in exploration of deep formations below the Gordon Sand are sufficiently protected by the implied covenant of reasonable development. We therefore decline to recognize a separate covenant to explore further.

**{¶ 23}** In this regard, we agree with the Oklahoma Supreme Court that recognition of a separate implied covenant to explore further would not support the overarching purpose of an oil and gas lease. As that court stated, "the profit motive [is] an instrumental force in oil and gas leases on behalf of both lessee and lessor," and to fail to recognize the profit motive "is to ignore the very essence of the contract." *Mitchell*, 638 P.2d at 447. The implied covenant of reasonable development furthers this purpose by focusing on all facts and circumstances relevant to development, whether they relate to exploration—for example, the costs of exploration and likelihood that exploration will result in production at or above a particular level—or to some other aspect of development. As the Oklahoma Supreme Court put it, the issue is whether a prudent operator would further develop the land "having due consideration for the interest of both the lessee and lessor, considering all factors, including what is known about the market, the geology and adjoining activity." *Id.* Recognizing a separate implied covenant to explore further would prove unhelpful at best, as it would focus on just a small subset of factors relevant to the overall profitability of development to the lessor and the lessee.

**{¶ 24}** We also note that the implied covenant of reasonable development is well suited to address the primary driver of the Landowners' interests here, namely, the emergence of new drilling technologies permitting production from deep strata that could not be obtained before. We need not address that issue here, however, because the Landowners have raised only the implied covenant to explore

further in this proposition, and we express no opinion with respect to how a prudent operator would or would not employ new deep-drilling technologies. Finally, as noted above, to the extent the parties wish to address exploration or the use of new technologies in the terms of the lease itself, they are of course free to do so.

{¶ 25} We therefore hold that under Ohio law concerning oil and gas leases, there is no implied covenant to explore further separate and apart from the implied covenant of reasonable development. As a result, it is unnecessary for us to address the Landowners' second argument concerning the availability of partial horizontal forfeiture as a remedy, and we express no opinion on the appellate court's decision on that issue to the extent it applies to the implied covenants raised by the Landowners other than the implied covenant to explore further.

## B. The Law Applicable to an Oil and Gas Lease

{¶ 26} The Landowners' first proposition is that the law applicable to one form of oil and gas lease may not be, and generally is not applicable to another and different form. This proposition is uncontroversial and simply appears to restate what this court has recognized since 1897: "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form." *Harris*, 57 Ohio St. at 129, 48 N.E. 502.

## IV. Conclusion

{¶ 27} For these reasons, we affirm the judgment of the court of appeals dismissing the Landowners' complaint for failure to state a claim.

Judgment affirmed.

O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

O'NEILL, J., dissents.

_____

Scullin & Cunning, L.L.C., and Sean R. Scullin, for appellants.

Geiger, Teeple, Robinson & McElwee, P.L.L.C., and Bruce Smith, for appellees.

Porter, Wright, Morris & Arthur, L.L.P., Christopher J. Baronzzi, L. Bradfield Hughes, and Ryan T. Steele, urging affirmance for amicus curiae American Petroleum Institute.

Vorys, Sater, Seymour & Pease, L.L.P., Timothy B. McGranor, and Gregory D. Russell, urging affirmance for amici curiae Ohio Oil and Gas Association and Southeastern Ohio Oil and Gas Association.

_____