[Cite as *Eye Specialists of Delaware v. Harleysville Worchester Ins. Co.*, 2022-Ohio-4531.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Eye Specialists of Delaware, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 21AP-90 |
| v. | : | (C.P.C. No. 20CV-6386) |
| Harleysville Worchester Insurance Company et al., | : | (ACCELERATED CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on December 15 2022

**On brief:** *Sammon Law, LLC, Colin P. Sammon,* and *William J. Novak*, for appellant. **Argued:** *Colin P. Sammon.*

**On brief:** *Bricker & Eckler*, *LLP*, *Ali H. Haque*, and *Drew H. Campbell*, for appellee. **Argued:** *Ali H. Haque.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, Eye Specialists of Delaware ("ESD"), suffered losses after it was forced to shut its doors in the wake of the COVID-19 pandemic, but defendants-appellees, Harleysville Worchester Insurance Company and Nationwide Mutual Insurance Company (collectively, "Harleysville"), denied ESD's claim for that loss. ESD filed suit and now appeals from the decision of the Franklin County Court of Common Pleas granting Harleysville's motion to dismiss under Civ.R. 12(B)(6). Because the trial court did not err when it applied a virus exclusion in the parties' insurance contract, we will affirm the judgment dismissing ESD's claims.

{¶ 2} ESD owns and operates three ophthalmologic service providers in Dover, Delaware. (Compl. at ¶ 1.) ESD obtained a "business interruption insurance" policy from

Harleysville, branded the "Premier Business Owner's Policy" (hereinafter, "Policy"), and renewed it for the period of April 2, 2019, to April 2, 2020. *Id.* at ¶ 1, 23. The Policy's coverage provision stated: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Oct. 23, 2020 Def.'s Mot. to Dismiss the Compl., attached as Ex. 5, Part 2 at 1.) The Policy provided a number of "additional coverages." One was for "Business Income," which it defined as:

> the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 6.

{¶ 3} The Policy defined another additional coverage, "Civil Authority," as follows:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id.* at 8.

{¶ 4} The Policy's "Covered Causes of Loss" included "[r]isks of direct physical loss unless the loss" was subject to a defined exclusion or limitation. *Id.* at 2. The "Exclusions" provision stated: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 15. The "Exclusion of Loss Due to Virus or Bacteria" (hereinafter, "Virus Exclusion") applied to "all coverage" under the Policy, with the express admonition that the exclusion was "not limited to * * * forms or endorsements that cover business income, extra expense, or action of civil authority." *Id.* at 71. The Virus Exclusion stated: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease." *Id.*

{¶ 5}    Shortly after the World Health Organization declared COVID-19 a pandemic in March of 2020, Delaware's governor declared a state of emergency and issued a series of orders that resulted in the closure of many businesses.  (Compl. at ¶ 3-9.).  Authorities "recommended [that] the provision of all non-emergency ophthalmological services" cease. *Id.* at ¶ 9.  As a result of the government's orders, ESD was "forced to halt ordinary operations" and "shut down," causing "substantial lost revenues" and "a loss of business income." *Id.* at ¶ 10

{¶ 6}    ESD submitted a claim under the Policy for "business interruption losses," but Harleysville denied it. *Id.* at ¶ 42-43.  On September 28, 2020, ESD filed a three-count complaint against Harleysville.  Count I sought a declaratory judgment that would interpret the Policy to allow ESD's claim to be approved and declare that Harleysville must pay ESD "for the full amount of the losses incurred and to be incurred in connection with the covered business losses" resulting from the closure of its offices. *Id.* at ¶ 48-52.  Count II alleged that Harleysville's denial of the claim amounted to a breach of contract. *Id.* at ¶ 53-59.  Count III alleged that Harleysville had breached its duty of good faith and fair dealing by "intentionally and maliciously" denying ESD's claim. *Id.* at ¶ 60-65. In addition to the declaratory judgment, ESD sought compensatory damages, attorneys' fees, costs, and punitive damages. *Id.* at ¶ 65.

{¶ 7}    Primarily invoking the Virus Exclusion, Harleysville filed a motion under Civ.R. 12(B)(6) to dismiss ESD's complaint for failure to state a claim upon which relief may be granted.  Harleysville argued that the Virus Exclusion presented an "insurmountable bar to coverage"  because it barred coverage if a virus was "the basis for 'physical loss' or 'damage' to the insured's property" and because it rendered any loss caused by a virus definitionally not a "Covered Cause of Loss" under the Policy.  (Oct. 23, 2020 Def.'s Mot. to Dismiss the Compl. at 6-7.)  Harleysville described ESD's characterization of the pandemic and the governmental orders as causing its losses instead of the virus as "attempts to plead around the Virus Exclusion" in the complaint. *Id.* at 8-9.  Harleysville also argued that even if the Virus Exclusion did not apply, Business Income and Civil Authority coverage both required " 'direct physical loss or damage' as a prerequisite to coverage," which ESD had not alleged. *Id.* at 10.

{¶ 8} In its response, ESD argued that Harleysville's motion was a motion for summary judgment masquerading as a motion to dismiss because it raised "factual challenges" to the allegations in the complaint, such as EDS's status as an essential or non-essential business, the cause of the government's shutdown orders, and whether the COVID-19 virus causes actual damage to property. (Nov. 20, 2020 Memo. Contra at 15.) ESD argued that the Business Income provision, Civil Authority provision, and Virus Exclusion were all ambiguous and should be interpreted in its favor because the Policy was a contract of adhesion. *Id.* at 18-26. ESD also argued that Harleysville's assertion that ESD had not alleged physical loss or damage to property stemmed from a "narrow interpretation" of the Policy language that was at odds with case law interpreting similar language.[1] *Id.* at 27-29.

{¶ 9} The trial court ruled that the Virus Exclusion was unambiguous and a complete bar to coverage under the Policy, and therefore granted Harleysville's motion to dismiss. (Feb. 1, 2021 Decision & Entry at 7-9.) ESD has appealed and asserts the following assignment of error:

> THE TRIAL COURT ERRED BY GRANTING DEFENDANT-APPELLEE'S MOTION TO DISMISS PLAINTIFF-APPELLANT'S COMPLAINT PURSUANT TO RULE 12(B)(6) OF THE OHIO RULES OF CIVIL PROCEDURE.

{¶ 10} We apply a de novo standard when reviewing the dismissal of a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted. *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, ¶ 10. This entails accepting all of the complaint's factual allegations as true, and "those allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor." *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, ¶ 12. We will affirm the dismissal only if it "appear[s] beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Id.*

---

[1] The trial court granted Harleysville's motion to strike portions of ESD's response because it exceeded the local rule's page limitation on memoranda. (Feb. 1, 2021 Decision & Entry at 3-4.) Nevertheless, it still considered ESD's contention that language of the Virus Exclusion was ambiguous, even though the bulk of this argument was within the stricken portion of the memorandum.

{¶ 11} We also apply a de novo standard to the trial court's interpretation of the Policy because contract interpretation is a matter of law. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995) (holding that court of appeals properly applied de novo review to an insurance policy where "the interpretation of this insurance contract is a matter of law" and "questions of law are reviewed by a court de novo").

{¶ 12} "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999), citing *Employers' Liab. Assur. Corp. v. Roehm*, 99 Ohio St. 343 (1919), syllabus. A court must "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Galatis* at ¶ 11, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. Interpretation relies only upon "the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Galatis* at ¶ 11, citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus ("Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.").

{¶ 13} If a "written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." *Galatis* at ¶ 13, citing *Cent. Realty Co. v. Clutter*, 62 Ohio St.2d 411, 413 (1980). For this reason, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy." *Morfoot v. Stake*, 174 Ohio St. 506 (1963).

{¶ 14} ESD argues that the phrase "direct physical loss of or damage to property" in the Policy section addressing Business Income coverage is ambiguous, relying on

*Henderson Rd. Restaurant Sys., Inc. v. Zurich Am. Ins. Co.*, 513 F. Supp.3d 808 (N.D.Ohio 2021). (Merit Brief of Appellant at 14-15.) Thus, ESD argues, the phrase should be construed in its favor to allow coverage "because ESD alleged in the Complaint that [it] experienced loss of its insured premises when forced shut down in response to the Government Order." *Id.* at 16. ESD also points to what it deems ambiguous language in the Policy defining "period of restoration" to argue in favor of coverage. *Id.* at 17-19. Referencing the allegations of the complaint, ESD also argues that the Virus Exclusion does not bar coverage because "the most direct and efficient cause of ESD's loss of its insured premises was the Government Orders that precluded ESD from using the insured premises for its intended use, not a virus." *Id.* at 22. In ESD's reading of the Policy, "the only reasonable interpretation of the exclusion is that it can apply only if there is evidence that a 'virus' was present on the insured premises," pointing to an exception to the exclusion for loss or damage caused by fungi or rot. *Id.* at 23. ESD again cites *Henderson* to argue that its allegation that governmental action, not the virus, was the cause of its shutdown supports not applying the Virus Exclusion to bar coverage. *Id.* at 23-24.

{¶ 15} In response, Harleysville argues that the issue of whether a direct physical loss occurred is irrelevant to this appeal because it formed no part of the trial court's analysis, so the coverage issue is "moot." (Brief of Appellees at 12-14.) The trial court's ruling only applied the Virus Exclusion, Harleysville argues, and the exclusion would bar coverage even in the event of a direct physical loss. *Id.* at 14-16. Citing a plethora of cases that have applied virus exclusions to bar coverage of losses stemming from the COVID-19 pandemic, Harleysville points to several that specifically cited the trial court's decision. *Id.* at 16-18. Harleysville also asserts that ESD has presented several arguments for the first time on appeal, namely, that the government's orders were "the most direct and efficient cause" of ESD's loss, and that the virus had to be physically present on the premises for the exclusion to apply. *Id.* at 19-25.

{¶ 16} As an initial matter, we note that the *Henderson Road* decision, which ESD relies upon to argue that it suffered a direct physical loss, was summarily reversed in an interlocutory appeal by the Sixth Circuit Court of Appeals on the authority of *Santo's Italian Café LLC, v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir.2021), after which the district court entered summary judgment for the insurer. *See In re Zurich Am. Ins. Co.*, 6th Cir. No. 21-

0302, 2021 U.S. App. LEXIS 29440 (Sept. 29, 2021) (granting interlocutory appeal, vacating the district court's order "as to the insurance coverage issue" and remanding case) and *Henderson Rd. Restaurant Sys., Inc. v. Zurich Am. Ins. Co.*, 569 F. Supp.3d 718, 724 (N.D.Ohio 2021) (granting summary judgment in favor of insurer and noting that "[t]he Sixth Circuit has made clear that mere loss of use is insufficient to trigger insurance coverage for 'direct physical loss' of 'property' under the ordinary meaning of those words"). We take no position on the Sixth Circuit's ultimate holding that "a pandemic-triggered government order" requiring a business to close did not "count as 'direct physical loss of or damage to' the property," precluding coverage. *Santos*, 15 F.4th at 401. Unlike in *Santo's Italian Café LLC*, we are not reviewing a trial court determination of whether "the policy did" or did "not cover this type of peril." *Id.* at 400. Whether or not coverage of loss existed, the issue in this case is whether the Virus Exclusion applies. *Compare id.* at 406 (declining to "rely on-or finally construe" a similar virus exclusion, having concluded that no coverage existed).

{¶ 17} Thus, we agree with Harleysville that ESD's arguments concerning the applicability and alleged ambiguity of the Business Income coverage provision are irrelevant to this appeal. The Policy's "Exclusions" provision states that Harleysville "will not pay for loss or damage caused directly or indirectly by any" exclusion listed. (Policy at 15.) Even assuming arguendo that ESD suffered a loss unambiguously described by the Business Income coverage provision, under the Virus Exclusion, no coverage would result if a virus was the direct or indirect cause of the loss. Stated another way, we can accept as true ESD's allegation in the complaint that it was "forced to halt ordinary operations" as a "result" of the Delaware governor's order. (Compl. at ¶ 10.) But the Virus Exclusion would still apply. COVID-19 caused the shutdown, even if one considers it an indirect cause, as the language of the Virus Exclusion contemplates. *MIKMAR, Inc. v. Westfield Ins. Co.*, 520 F. Supp.3d 933, 945 (N.D.Ohio 2021) (noting that "[e]ven if Plaintiffs are correct that their claimed losses arise from governmental action and not the virus itself, the virus exclusion in [plaintiff's] policy applies to loss or damage caused 'directly or indirectly' by a virus," and, when applied, "[t]his policy language sweeps aside the causation question Plaintiffs raise to try to avoid application of the exclusion's plain language"); *Sys. Optics, Inc. v. Twin City Fire Ins. Co.*, N.D.Ohio No. 5:20-cv-1072, 2021 U.S. Dist. LEXIS 97491, at *15 (May 24,

2021) (interpreting the "directly or indirectly" language of an identical virus exclusion applied to an optometry clinic's claim against insurer and noting that "[w]hile the government closure orders may have been the final link in the loss sequence chain, there is no question that the coronavirus was the first link that set the sequence in motion").

{¶ 18} The language of the Virus Exclusion "is plain and unambiguous and covers the losses" ESD alleged. *MIKMAR, Inc.*, 520 F. Supp.3d at 946. *See also Nail Nook, Inc. v. Hiscox Ins. Co.*, 8th Dist. No. 110341, 2021-Ohio-4211 (following *MIKMAR, Inc.* and affirming dismissal of claims against insurer by applying virus exclusion); *ABC Dental v. Amco Ins. Co.*, N.D.Ohio No. 3:21 CV 606, 2021 U.S. Dist. LEXIS 156313 (July 13, 2021) (dismissing case because the stated "claims are barred by the Policy's virus exclusion"); *Sys. Optic, Inc.*, 2021 U.S. Dist. LEXIS 97491 (May 24, 2021) (applying virus exclusion and granting insurer's motion for judgment on the pleadings).

{¶ 19} Because the Virus Exclusions is a bar to coverage under the Policy, the trial court did not err by granting Harleysville's motion to dismiss under Civ.R. 12(B)(6). Accordingly, we overrule ESD's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

———————————————