[Cite as *Jones v. Russell*, 2024-Ohio-1857.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| MARY ELIZABETH JONES, | **CASE NO. 2023-P-0100** |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| JOHN RUSSELL, et al., | |
| Defendants-Appellees. | Trial Court No. 2022 CV 00584 |

**O P I N I O N**

Decided: May 13, 2024
Judgment: Affirmed in part, reversed in part; remanded

*Mary Elizabeth Jones*, P.O. Box 5, Aurora, OH 44202 (Plaintiff-Appellant).

*John Russell*, 879 Kickapoo Avenue, Akron, OH 44305 (Defendant-Appellee).

*Christopher E. Cotter* and *Emily K. Anglewicz*, Roetzel & Andress, LPA, 222 South Main Street, Suite 400, Akron, OH 44308 (For Defendant-Appellee, Match Group, Inc.).

EUGENE A. LUCCI, P.J.

{¶1} Appellant, Mary Elizabeth Jones, appeals from the judgment awarding her damages on her claims against appellee John Russell, after the court dismissed her claims against appellee Match Group, Inc. We affirm in part, reverse in part, and remand this matter for further proceedings consistent with this opinion.

{¶2} In 2022, Jones filed a multiple-count complaint against Russell and Match Group, alleging that she met Russell through the website "PlentyofFish.com," owned by Match Group. Jones maintained that Match Group failed to provide appropriate

background checks or install proper safety measures to protect its users. She also alleged that Match Group used deceitful advertising to lure users onto its website. After meeting Russell through the website, Jones alleged that Russell deceived her into pregnancy, he sexually transmitted a disease to her, and he physically attacked her during the course of their relationship. Jones asserted that Russell and Match Group were liable to her on the following causes of action: "negligence/personal injury," "intentional infliction of emotional distress," and "fraud/negligent misrepresentation."

{¶3} Thereafter, Jones moved for default judgment against Russell. Subsequently, Match Group filed a "Motion to Compel Arbitration and Alternative Motion to Dismiss[.]" Match Group's motion maintained, in part, that when Jones created her account, she had agreed to certain terms of use ("TOU"), including a mandatory arbitration provision.

{¶4} In November 2022, the trial court issued an order granting Match Group's motion to *dismiss* on the basis that Jones' claims were subject to mandatory arbitration and the trial court lacked "subject matter jurisdiction." The court denied Jones' motion for default judgment against Russell, as it determined that service had not yet been perfected on Russell.

{¶5} Jones noticed an appeal from the November 2022 order. This court dismissed the attempted appeal for lack of a final, appealable order. *Jones v. Russell*, 11th Dist. Portage No. 2022-P-0076, 2023-Ohio-351, ¶ 1, *appeal not accepted*, 170 Ohio St.3d 1419, 2023-Ohio-1507, 208 N.E.3d 853, ¶ 1.[1]

---

1. As will be further addressed in our discussion of Jones' second assigned error, we emphasize that the trial court *dismissed* the claims against Match Group on the basis of the arbitration provision. It did not

2

**{¶6}** Thereafter, Jones again moved for default judgment against Russell, maintaining that service had been perfected. The trial court granted Jones' motion and set the matter for a hearing on damages.

**{¶7}** Subsequently, Jones filed three requests for the court to reconsider its November 2022 order dismissing her claims against Match Group. On July 19, 2023, the trial court issued an order summarily denying Jones' requests. Jones then filed two combined motions to set aside the July 19, 2023 order, to appoint a new judge, and to continue the damages hearing. On July 26, 2023, the trial court issued an order denying Jones' requests to set aside the July 19, 2023 order and to appoint a new judge and granting Jones' motion to continue the damages hearing. Jones noticed an appeal from the July 2023 orders. This court again dismissed the attempted appeal for lack of a final, appealable order. *Jones v. Match Group, Inc.*, 11th Dist. Portage No. 2023-P-0064, 2023-Ohio-3418, ¶ 6, 9.

**{¶8}** Thereafter, this matter was heard by a magistrate on the issue of damages. Prior to the decision of the magistrate being filed, the trial court issued a decision on December 6, 2023, adopting the magistrate's decision and entering judgment in the amount of $1,000.00 against Russell. On December 7, 2023, the magistrate's decision was filed.

**{¶9}** Jones appeals, assigning two errors for our review. In her first assigned error, Jones argues:

> The trial court erred because it failed to acknowledge the
> permanent medical injuries that were provided in the exhibits
> at the hearing. By this failure to acknowledge the permanent

---

issue a *stay* pending arbitration. *Compare with* R.C. 2711.02(C) (order granting or denying a *stay* pending arbitration is a final, appealable order).

Case No. 2023-P-0100

medical injuries; it significantly undervalued the total dollar amount owed to the appellant for her damages.

{¶10} At the outset, we address a procedural irregularity affecting our review of Jones' first assigned error.

{¶11} As discussed above, the trial court issued a judgment on December 6, 2023 "adopt[ing], in whole, the Magistrate's Decision without modification," and the court then awarded a judgment of $1,000.00 in favor of Jones against Russell. However, the magistrate's decision was not filed until December 7, 2023.

{¶12} Jones filed no objections to the magistrate's decision. When matters are referred to a magistrate for decision, Civ.R. 53(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

{¶13} Civ.R. 53(D)(3)(b) allows parties to file objections to a magistrate's decision within fourteen days of the *filing* of the decision. Although a court may adopt a magistrate's decision and enter a judgment during the fourteen-day objection period, the rule does not contemplate the situation present here, where the trial court's entry adopting the magistrate's decision and entering judgment is filed a day prior to the filing of the magistrate's decision. *See* Civ.R. 53(D)(4)(e)(i) (court may adopt a magistrate's decision and enter judgment "during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections to a magistrate's decision or after the fourteen days have expired"). Although the timely filing of objections automatically stays a trial court's judgment "during the fourteen days permitted by Civ.R. 53(D)(3)(b)(i) for the filing of objections," here,

4

Case No. 2023-P-0100

because the trial court issued judgment prior to the filing of the magistrate's decision, it effectively terminated the matter prior to the fourteen-day objection period.

{¶14} As the trial court entered judgment outside of the procedure contemplated by Civ.R. 53, we conclude that Jones' argument advanced in her first assigned error is not forfeited by operation of Civ.R. 53(D)(3)(b)(iv). *See Mix v. Mix*, 11th Dist. Portage No. 2003-P-0124, 2005-Ohio-4207, ¶ 22 (where magistrate's decision was not issued in accordance with Civ.R. 53(D), in that the required language of Civ.R. 53(D)(3)(a)(iii) was not included on the magistrate's decision, the appellant who failed to file objections was not barred from assigning error to the trial court's adoption of the magistrate's decision); *see also State v. Wheeler*, 2016-Ohio-2964, 65 N.E.3d 182, ¶ 15 (2d Dist.).

{¶15} Nonetheless, Jones' first assigned error alleges that the trial court failed to recognize her exhibits presented at the hearing before the magistrate when calculating her damages. However, Jones did not secure a transcript of the damages hearing for submission on appeal.

{¶16} "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980), citing *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978). App.R. 9(B)(1) provides, "Except as provided in App.R. 11.2(B)(3)(b), it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, however those proceedings were recorded, are

5

transcribed in a form that meets the specifications of App. R. 9(B)(6)."[2] Exhibits admitted at the hearing are to be included with the transcript pursuant to App.R. 9(B)(6)(g).  "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."  *Knapp* at 199.

{¶17} Accordingly, because Jones' first assigned error is dependent upon review of the transcript of the magistrate's hearing, and she has failed to secure a copy of the transcript for submission on appeal, she cannot meet her burden of establishing error by reference to matters in the record.

{¶18} Therefore, Jones' first assigned error lacks merit.

{¶19} In her second assigned error, Jones asserts:

> The trial court erred and made a prejudicial error in originally dismissing the action against the appellee Match Group as they had already made an admission of liability in their motion filed on 10/31/2022, no contract and/or terms and conditions can be legally enforced that contains fraud or misleading statements, not honoring Ohio Consumer Protection laws, and most importantly, appellee Match Group never requested or provided discovery going on two years without discovery, what can the appellee Match Group possibly argue at this point? It's only "assumptions and other people case laws that has nothing to do with this personal injury lawsuit[.]"

{¶20} In response, Match Group raises the following cross-assignments of error:

1. An Arbitrator must decide the arbitrability of the dispute.

2. Jones sued the wrong legal entity.

---

2. Where no transcript is available, App.R. 9(C) provides a method whereby a statement of the evidence may be prepared.  Further, App.R. 9(D) establishes a procedure whereby the parties may prepare a statement of the case "in lieu of the record on appeal[.]"  However, neither App.R. 9(C) or 9(D) statement were approved by the trial court and submitted in this appeal.

6

Case No. 2023-P-0100

3. In alternative to mandatory Arbitration, Texas is the proper forum under the mandatory forum selection clause.

4. Match is Immune under Section 230 of the CDA.

5. Match Owed No Duty to Jones.

6. The TOU disclaimers and limitations on liability bar Jones' claims.

**{¶21}** As briefly discussed in our recitation of the facts above, on October 13, 2022, Match Group filed a motion entitled "Motion to Compel Arbitration and Alternative Motion to Dismiss[.]" For clarity, we note that, in this motion, Match Group first sought *dismissal* on the basis of the arbitration provisions contained in the TOU, then sought *dismissal* on several other bases, and, *if the court did not dismiss* for any of the bases set forth therein, Match Group *alternatively requested a stay pending arbitration*. *See* R.C. 2711.02(B) (permitting court to *stay* trial of an action pending arbitration). In its motion, Match Group cited Civ.R. 12(B)(1) and 12(B)(6) as providing the procedural mechanisms for dismissal. Match Group attached to its motion an affidavit of Ron Lo, who attested that he is the Chief Product Officer at PlentyofFish Media ULC, of which Match Group is the ultimate parent company. Match Group set forth several arguments for dismissal of Jones' claims against it based on Jones' complaint and Lo's affidavit, which incorporated attached exhibits.

**{¶22}** On November 8, 2022, the trial court granted Match Group's motion to dismiss, holding that Jones' "claims against Match Group, Inc. are subject to mandatory arbitration. The Court therefore dismisses Plaintiff's claims against Defendant Match Group Inc. pursuant to Civ.R. 12(B)(1) for lack of subject matter jurisdiction."

7

Case No. 2023-P-0100

**{¶23}** In support of Jones' second assigned error, she maintains that the trial court erred in determining that it lacked subject matter jurisdiction.

**{¶24}** We review de novo a trial court's decision to dismiss pursuant to Civ.R. 12(B)(1) for lack of subject matter jurisdiction. *Johnsonite, Inc. v. Welch*, 11th Dist. Geauga No. 2011-G-3012, 2011-Ohio-6858, ¶ 51. "The trial court is not confined to the allegations of the complaint when determining its subject-matter jurisdiction pursuant to a Civ.R. 12(B)(1) motion to dismiss, and it may consider material pertinent to such inquiry without converting the motion into one for summary judgment." *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 358 N.E.2d 526 (1976), paragraph one of the syllabus.

**{¶25}** Here, Match Group relied on Lo's affidavit to assert that, in order for Jones to create a PlentyofFish account, she was required to accept the TOU, which included a mandatory arbitration clause. Match Group argued that, "[b]ecause [Jones'] claims against Match are subject to binding arbitration, dismissal pursuant to Rule 12(B)(1) for lack of subject matter jurisdiction is warranted."

**{¶26}** However, "[s]ubject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." (Citation omitted.) *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19. "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." (Citations omitted.) *Id.* This case "involves a constitutionally created common pleas court." *See id.* at ¶ 20. "Ohio's common pleas courts are endowed with 'original jurisdiction over all justiciable matters * * * as may be provided by law.'" *Id.* at ¶ 20, quoting Article IV, Section 4(B), Ohio Constitution.

8

"Jurisdiction has been 'provided by law' in R.C. 2305.01, which states that courts of common pleas have 'original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts.'" *Kuchta* at ¶ 20.

{¶27} Assuming, without deciding, that the claims against Match Group are subject to mandatory arbitration, Match Group did not address why an agreement to arbitrate would divest the trial court of subject matter jurisdiction. Further, this court has determined that, as arbitration agreements may be waived, such agreements do not affect the subject matter of a trial court, as lack of subject matter jurisdiction cannot be waived by the parties. *Bank of Am. v. Telerico*, 11th Dist. Portage No. 2015-P-0026, 2015-Ohio-4544, ¶ 29. *See also Ponyicki v. Monterey Homes*, 8th Dist. Cuyahoga No. 65549, 1994 WL 197226 (May 19, 1994). Thus, here, dismissal of the claims on the basis of the lack of subject matter jurisdiction was in error. *See* R.C. 2711.02 and 2711.03 (providing that trial court may compel arbitration and stay proceedings on motion by a party); *see also Taylor v. Norfolk Southern Ry. Co.*, 8th Dist. Cuyahoga No. 85699, 2005-Ohio-4576, ¶ 12 ("[W]hen a dispute is subject to arbitration, the trial court should stay the lawsuit rather than dismiss it[.]") (Citations omitted).

{¶28} Accordingly, Jones' second assigned error has merit to the extent that the trial court erred in determining that it lacked subject matter jurisdiction over her claims against Match Group.

{¶29} However, "[a] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." (Citations omitted.) *State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 92, 637 N.E.2d

9

306 (1994). In support of affirming the trial court's *dismissal* of the claims against it on alternative bases, Match Group raises the cross-assignments of error set forth above.

**{¶30}** We review the cross-assignments of error mindful that again, despite captioning its motion as a "Motion to Compel Arbitration and Alternative Motion to Dismiss," Match Group first sought *dismissal* of all claims against it on the basis of the arbitration provisions. Match Group then provided several other bases for dismissal of the claims. Match Group *did not seek a stay pending arbitration unless its motion for dismissal was overruled*. As the trial court dismissed the claims, the propriety of a stay pending arbitration is not before us, and we review only whether the remaining bases for blanket dismissal of the claims was warranted. Next, we again note that Match Group maintained that dismissal of Jones' claims against it was appropriate pursuant to Civ.R. 12(B)(1) and Civ.R. 12(B)(6), and we review its arguments in accordance with these rules.

**{¶31}** Aside from its arguments that dismissal of the claims was warranted due to the arbitration clause, we cannot discern any other argument in Match Group's motion to dismiss that relied upon Civ.R. 12(B)(1). Match Group's first cross-assigned error pertains to its argument that arbitrability should be decided by the arbitrator. However, as determined above, because an agreement to arbitrate does not divest a trial court of subject matter jurisdiction, Match Group's first cross-assigned error is not well-taken.

**{¶32}** The remaining bases for dismissal do not appear to address the trial court's subject matter jurisdiction. Thus, we review whether dismissal on the remaining grounds was appropriate under Civ.R. 12(B)(6).

**{¶33}** "We review de novo a decision granting a motion to dismiss under Civ.R. 12(B)(6)." *State ex rel. Taylor v. Montgomery Cty. Court of Common Pleas*, Ohio

10

Supreme Court Slip No. 2024-Ohio-1127, ¶ 12 (Mar. 28, 2024), citing *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, 95 N.E.3d 382, ¶ 10. "In conducting this review, we accept all factual allegations in the petition as true, and we will not affirm the dismissal unless it appears beyond doubt that the nonmoving party can prove no set of facts that would entitle him to relief." *Taylor* at ¶ 12, citing *Alford* at ¶ 10. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. * * * Thus, the movant may not rely on allegations or evidence outside the complaint; otherwise, the motion must be treated, with reasonable notice, as a Civ.R. 56 motion for summary judgment." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992).

{¶34} Here, Match Group's alternative arguments for dismissal on the bases that Jones brought her claims against the incorrect legal entity, that Texas is the proper forum under the mandatory forum selection clause, and that the TOU disclaimers and limitations on liability bar Jones' claims, rely on Lo's affidavit and exhibits. Accordingly, these arguments for dismissal rely on facts outside the allegations of the complaint and could not serve as an alternative basis for dismissal under Civ.R. 12(B)(6), as the court did not convert the motion to dismiss into a motion for summary judgment. Consequently, Match Group's second, third, and sixth cross-assignments of error are not well-taken.

{¶35} In regard to Match Group's fourth and fifth cross-assignments of error, we note that, in its motion to dismiss, Match Group provided no discussion of the elements of each of the three claims against it. Instead, it focused on the factual allegations of the complaint in arguing that the claims be dismissed without drawing a nexus between

11

those factual allegations and the elements of the claims. Accordingly, this court will review only whether a blanket dismissal of the claims was appropriate for the reasons set forth in Match Group's motion.

{¶36} With respect to Match Group's fourth cross-assignment of error, it relies on statutory immunity under the Communications Decency Act ("the CDA"). The Eighth District has summarized the CDA as follows:

> The CDA establishes immunity "'against causes of action of all kinds'" for interactive service providers and users. *US Dominion, Inc. v. Byrne,* D.D.C. Civil Action No. 1:21-cv-02131 (CJN), 2022 U.S. Dist. LEXIS 72634, 19, 2022 WL 1165935 (Apr. 20, 2022), quoting *Marshall's Locksmith Serv. Inc. v. Google, L.L.C.*, 925 F.3d 1263, 1267, 441 U.S. App. D.C. 196 (D.C. Cir. 2019). Section 230(c)(1) of the CDA states, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. 230(c)(1). Furthermore, the CDA expressly preempts civil claims under state law: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. 230(e)(3).
>
> The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. 230(f)(2). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* at 47 U.S.C. 230(f)(3). Section 230(c)(1) does not extend immunity to information content providers. While "user" is not defined within the statute, Merriam-Webster's dictionary defines "user" as "one that uses." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/user (accessed May 18, 2022); *See State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 39 ("In the absence of a definition of a word or phrase used in a statute, words are to be given their common,

12

ordinary, and accepted meaning."); *State v. Jackson*, 12th Dist. Butler No. CA2011-06-096, 2012-Ohio-4219, ¶ 34 ("Courts have used dictionary definitions to determine the plain and ordinary meaning of a statutory term.").

*Holmok v. Burke*, 8th Dist. Cuyahoga No. 110900, 2022-Ohio-2135, ¶ 13-14, *appeal not allowed*, 168 Ohio St.3d 1407, 2022-Ohio-3546, 195 N.E.3d 1052.

**{¶37}** Therefore, the CDA "precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir.1997)

**{¶38}** Here, Match Group maintained that Jones' claims against it are barred by the CDA because: (1) Match Group is a provider of an "interactive computer service;" (2) Match Group is not an "information content provider" with respect to the content on which Jones' claims are based; and (3) Jones' claims effectively treat Match Group as responsible for that content. In support, Match Group contends that dating websites are consistently treated as "interactive computer services," and Jones' claims against Match Group arise from communications from Russell.

**{¶39}** However, in the first three paragraphs of her complaint, Jones alleged:

1. A relationship was established between both the Plaintiff, Mary Elizabeth Jones and the Defendant (A), John Russell on September 30, 2019. They interacted and met off the dating website, Plentyoffish.com, Match Group Inc. (Defendant B) is the owner.

2. Defendant (B) Match Group, Inc. misleadingly advertises and portray that their website is "fun and cool" for the user who signs up to use their service. They use deceptive advertising techniques with phrases such as "success stories for finding real love" or "use images with married couples" to

13

lure the prospective customer in to signing up for their services and to give false hope that the user would find "true love" (Shown in Exhibit A). Defendant (B) would send dozens of emails to the Plaintiff about "likes" and "favorites" and the constant persuasion of "love is just a click away" and causing her the belief that she would find a good relationship, Defendant (B) is common for implementing deceptive advertising techniques to lure and entice consumers even if it means causing them emotional distress for their own monetary gain, "Federal Trade Commission vs. Match Group, 2019", Ohio Revised Code 2305.09.

3. Defendant (B) claims to work with numerous law enforcement agencies, but it does not offer any type of protective feature, but instead, it will allow anyone with any type of sinister motive, or illegal background to prey on users who are genuinely looking for a real relationship with pure intentions. Additionally, there is no "disclaimer", or "warning", or "use at your own risk" on its homepage that clearly states that they do not provide screening, or any type of due diligence on its users which makes it too easy for anyone who utilizes the site to become a "victim". This type of disclaimer would allow the user to make a better choice, similar to cigarette and tobacco companies who places a warning label on their products. Defendant (B) partnered with a service on or around the years between 2021-2022 called "Noon light"' which protects members by providing "backup" on every meeting. This option was not available to the Plaintiff and she would have never agreed to meet Defendant (A) offline, or continued the date with Defendant (A) if this protective, or screening option were available because the Plaintiff was "pressured, intimidated, manipulated, and bullied" into continuing the date with Defendant (A). He is 6'1, 400 pounds and the Plaintiff is 4'11 and 135 pounds. Defendant (A) is also on parole for Summit County for a prior conviction of drug trafficking in 2013, he was sleeping on different people couches, practically homeless and fresh out of the halfway house. He misrepresented himself and conned the Plaintiff into believing that he was looking for "marriage and a family to call bis own". Plaintiff has both a Bachelors and a Master's Degree with no criminal background and has stable housing. Therefore, Defendant (B) did not offer the Plaintiff any type of safety measures such as Noon light, no disclaimers, or warnings on its very first homepage before sign-up when she was a user of its service.

14

Thus, Jones' allegations refer not only to communications made by Russell, but also communications made by Match Group, such as its advertising emails. Accordingly, construing all allegations in Jones' favor, dismissal of her claims was not warranted under the CDA for the reasons advanced in Match Group's motion. Therefore, Match Group's fourth cross-assignment of error is not well-taken.

{¶40} Last, with respect to Match Group's fifth cross-assignment of error, it maintained in its motion to dismiss:

> It is well settled in Ohio that "there is no duty to control the conduct of a third person to prevent the commission of physical harm to another person 'unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relationship exists between the actor and the other which gives to the other the right to protection.'" *Godwin v. Facebook, Inc.*, 8th Dist. No. 109203, 2020-Ohio- 4834, 160 N.E.3d 372, ¶ 17 (quoting *Hite v. Brown*, 100 Ohio App.3d 606, 613, 654 N.E.2d 452 (8th Dist.1995)).

{¶41} However, as set forth above, Jones' allegations include that Match Group deceived her into using its service and are not based entirely on its failure to control Russell's conduct. Accordingly, Match Group's fifth cross-assignment of error is not well-taken.

{¶42} Having found that Jones' first assigned error lacks merit, the judgment against Russell is affirmed, and having found the Jones' second assignment of error has merit, and Match Group's cross-assignments of error are not well-taken, the order dismissing the claims against Match Group is reversed. We reiterate that we take no position on the propriety of a stay pending arbitration with respect to the claims against Match Group. The request for a stay remains pending for the trial court to decide in the

15

first instance.  This matter is remanded to the trial court for further proceedings consistent with this decision.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

Case No. 2023-P-0100